Tim **SWINNEY**; Jeff **Compton**; Steve **Durrough**; Douglas **Hampton**; Richard **Lipscomb**; Robert **Milligan**; Michael **Napier**; Joseph **Saylor**; and Denise **Pitts**, Plaintiffs–Appellants,

v.

**GENERAL MOTORS CORPORATION,** Defendant–Appellee.

No. 93–3872.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 19, 1994.

Decided Jan. 26, 1995.

David G. Torchia (argued and briefed), Tobias & Kraus, Cincinnati, OH, for plaintiffs-appellants.

John D. Luken, John M. Kunst, Jr. (argued and briefed), Susan J. Luken, Dinsmore & Shohl, Cincinnati, OH, Daniel G. Galant, General Motors Corp., Office of the Gen. Counsel, Detroit, MI, for defendant-appellee.

Leonard R. Page (briefed), Associate Gen. Counsel, International Union, UAW, Detroit, MI, for International Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW, amicus curiae.

Before: BROWN, MARTIN, and BOGGS, Circuit Judges.

BAILEY BROWN, Circuit Judge.

In this case, the plaintiffs, representing a class of former General Motors employees, claim that the defendant General Motors Corporation ("GM") breached its fiduciary duty to them under § 404 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The plaintiffs also claim that GM should be estopped under the federal common law of ERISA from denying them certain benefits. After a bench trial, the district court dismissed the plaintiffs' causes of action, and entered final judgment against them. The plaintiffs appealed. For the reasons set out below, we AFFIRM the judgment of the district court.

### I.

The facts in this case are largely undisputed. In November of 1986, GM announced that it would gradually close its Fairfield, Ohio stamping plant. The gradual closing resulted in a surplus of labor at the Fairfield plant, which triggered the job security provisions of the collective bargaining agreement. As jobs were phased out, employees were placed in the Job Opportunity Bank–Security Program ("JOBS Bank") where they received full salary and benefits while performing non-traditional work such as community service. The JOBS Bank remained open while the plant was gradually shutting down its operations, but when the plant closed completely, so would the JOBS Bank.

JOBS Bank employees, while they were waiting for the plant to close completely, were presented with two basic options: they could either completely sever their employment relationship with GM in exchange for a lump sum payment under the Voluntary Termination of Employment Program ("VTEP"), or they could stay in the JOBS Bank until the plant fully closed, and then go on permanent lay off, receiving an assortment of temporary benefits, including health insurance, Supplemental Unemployment Benefits ("SUB benefits"), and a Guaranteed Income Stream ("GIS benefits") (hereinafter the "laid-off workers benefits").[1] At that time, GM told the plaintiffs that these choices were mutually exclusive: persons who took the VTEP would not be eligible for the laid-off workers benefits, and laid-off workers would not be eligible for the VTEP. The plaintiffs all chose the VTEP over the laid-off workers benefits.

In March of 1989, after the plaintiffs had accepted their VTEPs and eight months after the plant finally closed, GM began examining other ways of reducing its labor costs. The company created an ad hoc committee to study the problem, and the committee made several recommendations. GM offered, based on these recommendations and with the union's approval, a new VTEP (called a "window VTEP") to laid-off workers, including the laid-off workers at the Fairfield plant. The workers who took this window VTEP therefore had received laid-off workers benefits until that point in time when they received their lump sum VTEP payment.

After learning of this additional VTEP offer, the plaintiffs brought this suit on the basis of diversity jurisdiction, contending that they should receive the benefits the laid-

---

1. There were several other options available to employees, but these are not relevant to our discussion.

off workers had received up to that point in time when the laid-off workers were offered their window VTEP. The plaintiffs' state law claims were based on fraud, negligent misrepresentation, and promissory estoppel. The district court dismissed these claims, finding they were preempted by federal law. The plaintiffs then amended their complaint, contending that GM had breached its fiduciary duty under ERISA by leading them into believing that laid-off workers could not receive a VTEP as well as laid-off workers benefits. They claimed that this misrepresentation resulted in the plaintiffs not receiving the health insurance, SUB benefits, and GIS benefits they would have received had they chosen to be laid off rather than bought out. In their suit, the plaintiffs ask for these benefits.

After a bench trial, the district court granted judgment in favor of the defendant. The district court held that GM was not seriously considering the window VTEP when it informed the plaintiffs that the VTEP available to them was not available to laid-off workers. Relying on *Drennan v. General Motors Corp.*, 977 F.2d 246 (6th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993), the district court held that GM did not breach its fiduciary duty to the plaintiffs because GM made no misrepresentations; the statements GM made concerning the initial VTEP offer had been true at the time. Plaintiffs appeal this decision.

## II.

Before reaching the merits, we must first address the two objections GM now raises to what it terms as our "jurisdiction" to hear the appeal. First, GM argues that because another panel of this court recently held that GM's VTEP plan was not an ERISA plan, appellants have no claim under ERISA, and the appeal should be dismissed for that reason. Second, GM argues that, in any event, the plaintiffs are not "participants" within the meaning of the ERISA statute, and therefore, do not have standing to bring this action. Neither of these contentions has merit.

## A.

■ After the district court's disposition of this case, but before oral argument here, a panel of this court issued the opinion in *Sherrod v. General Motors Corp.*, 33 F.3d 636 (6th Cir.1994). In *Sherrod*, we held that GM's VTEP plan was *not* an ERISA employee welfare benefit plan because it did not require an administrative scheme to execute. *Id.* at 638. The district court had granted GM's motion for summary judgment for that reason, and we affirmed the district court. *Id.* at 637.

The holding in *Sherrod* must have been quite a surprise to the plaintiffs in the present case, because in *Drennan*, without objection from the parties, we had treated GM's VTEP plan as an ERISA plan. Therefore, the status of the VTEP plan was not an issue in that case. *See Sherrod*, 33 F.3d at 638. Furthermore, GM had argued in the district court that the instant case was governed by federal law in moving to dismiss the plaintiffs' state law claims, and the district court had agreed with GM. Throughout the trial, both parties and the district court were clearly under the assumption that ERISA was the applicable law, and the plaintiffs have not appealed the district court's dismissal of their state law claims.

After our opinion in *Sherrod* was filed, however, GM filed a motion to dismiss this appeal, arguing that because the claims under the VTEP plan were not governed by ERISA, the district court had had no subject matter jurisdiction under ERISA after all. GM therefore argues that, according to our *Sherrod* opinion, this case is governed by state law, and the district court erred (although at GM's urging) in dismissing the state law claims and treating this as an ERISA case. At oral argument, the plaintiffs seemingly agreed that *Sherrod* was controlling, and that we should remand the case for disposition under state law, even though the plaintiffs did not appeal the dismissal of their state law claims.

We conclude, however, that *Sherrod* does not apply to this case, and that the plaintiffs' claim actually is controlled by ERISA. We regard the plans truly at issue here, the

plans under which the plaintiffs seek benefits, as the plans giving health insurance, SUB benefits, and GIS benefits to laid-off workers, i.e., the laid-off workers plans. The plaintiffs contend that GM's representations about the VTEP caused them to forego participating in the laid-off workers plans, and in their prayer for relief, the plaintiffs ask for these benefits, not for additional VTEP benefits. The issue this court addressed in *Sherrod* was whether the VTEP was an ERISA plan; it did not deal with the laid-off workers plans. *Sherrod* is therefore not controlling, and we have federal question jurisdiction of this case under ERISA so long as the laid-off workers plans are employee welfare benefit plans within ERISA's statutory definition. 29 U.S.C. 1002(1). They undoubtedly are.

■ The hallmark of an ERISA benefit plan is that it requires "an ongoing administrative program to meet the employer's obligation." *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). As we stated in *Sherrod:*

> In determining whether an ERISA plan exists, "[t]he pivotal inquiry is whether the plan requires an establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such a scheme; rather an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria."

*Sherrod,* 33 F.3d at 638 (quoting *Kulinski v. Medtronic Bio–Medicus, Inc.,* 21 F.3d 254, 257 (8th Cir.1994)). The need for an administrative scheme may also arise when the employer "assumes . . . responsibility to pay benefits on a regular basis, and thus faces . . . periodic demands on its assets that create a need for financial coordination and control." *Fort Halifax Packing Co. v.*

*Coyne,* 482 U.S. 1, 12, 107 S.Ct. 2211, 2218, 96 L.Ed.2d 1 (1987); *see also Simas v. Quaker Fabric Corp. of Fall River,* 6 F.3d 849, 853 (1st Cir.1993) (noting that in applying *Fort Halifax,* courts have generally emphasized "the mechanical, one-time nature of the severance payment.").

In this case, the GM plans providing SUB benefits, GIS benefits, and health insurance all pay out benefits on a periodic basis, as opposed to the one-time severance payment contemplated in *Sherrod* and *Fort Halifax.* Moreover, determining the eligibility for and level of each of these employee benefits requires the individualized decisionmaking which makes an ongoing administrative scheme a necessity. A cursory view of just one of the laid-off workers plans makes this point clear.[2] Eligibility for and the level of SUB benefits, for example, are determined by "Years of Seniority under the SUB Plan, the number of SUB Credit Units [the employee has], and the amount of money in the SUB fund." *J–A* at 105. Furthermore, to be eligible for benefits, the employee must show that he was either receiving government unemployment benefits, or had an acceptable reason for not receiving them. *J–A* at 106. *Simas,* 6 F.3d at 853 (finding the individualized decisionmaking necessary to establish an ERISA plan where the payment of the benefit was tied to the employee's eligibility for state unemployment.). Thus, determining each individual employee's benefits in the SUB benefit plan requires the employer to "analyze each employee's particular circumstances in light of the appropriate criteria." *Sherrod,* 33 F.3d at 638.

Because the laid-off workers plans are indeed ERISA plans, we conclude that we have jurisdiction to hear this appeal under ERISA and 28 U.S.C. § 1291.

### B.

■ In addition, GM claims on appeal that the plaintiffs lack standing to bring this case. Although GM did not raise this issue in

---

2. We need not discuss at length whether the GIS benefits and the health insurance are ERISA plans because we have federal jurisdiction so long as one of the plans is an ERISA employee benefit plan. A brief review of the record, however, indicates that both the GIS benefits and the health insurance do indeed require an ongoing administrative scheme to execute. *J–A* at 108–112.

district court, we address it nevertheless because standing is necessary for our exercise of jurisdiction. *United States v. Van,* 931 F.2d 384, 387 (6th Cir.1991).

■ Only "participants," "beneficiaries," "fiduciaries," and the Secretary of Labor may bring an action under ERISA. 28 U.S.C. § 1132. We conclude that the plaintiffs qualify as "participants" in the laid-off workers plans.

Under § 3(7) of ERISA, "participant" is defined as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7). In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court further defined this term, stating, with regard to former employees, that "participant" is "naturally read to mean ... former employees who 'have ... a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." *Id.* at 117, 109 S.Ct. at 958 (citations omitted). The Court defined a "colorable claim to vested benefits" as a colorable claim that (1) the person will "prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* at 117–18, 109 S.Ct. at 958.

In *Teagardener v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947 (6th Cir.1990), *cert. denied,* 498 U.S. 1027, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991), we applied the reasoning of *Bruch,* and concluded that employees cease to be "participants" in a plan when they effectively terminate all their rights under the plan. *Id.* at 952. As we noted in *Teagardener:*

> the definition of "participant" "excludes retirees who have accepted the payment of everything due them in a lump sum, because these erstwhile participants have already received the full extent of their benefits and are no longer eligible to receive future payments."

*Id.* (quoting *Joseph v. New Orleans Elect. Pension and Retirement Plan,* 754 F.2d 628, 630 (5th Cir.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985)). Because

the plaintiffs in *Teagardener* were no longer members of the plan at issue, they had no right to the plan's benefits. *Id.* Thus, they did not have a colorable claim to vested benefits, and could not be "participants" within the meaning of § 1002(7). *Id.* at 952.

Since our decision in *Teagardener,* however, we have noted that the Supreme Court's definition of the ERISA term "participant" was developed outside of the standing context. *See Drennan,* 977 F.2d at 250; *see also Vartanian v. Monsanto Co.,* 14 F.3d 697, 701 (1st Cir.1994). Thus, *Firestone* should not be read to "reduce the standing question to a straightforward formula applicable in all cases." *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). "In determining who is a 'participant,' for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of the plaintiffs' claim...." *Astor v. International Business Mach. Corp.,* 7 F.3d 533, 538 (6th Cir.1993) (quoting *Hughes v. General Motors Corp.,* 852 F.2d 568 (6th Cir.1988) (unpublished) *cert. denied,* 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 839 (1989)). Thus, while the Supreme Court's definition of "participant" in *Firestone* guides our standing analysis, it is not necessarily dispositive.

■ In construing § 1002(7) of ERISA in conjunction with traditional standing concepts, we, along with a majority of circuits, have developed an exception to the general rule that a person who terminates his right to belong to a plan cannot be a "participant" in the plan. Specifically, if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach. *Mullins v. Pfizer,* 23 F.3d 663, 668 (2nd Cir.1994); *Vartanian,* 14 F.3d at 702; *Astor,* 7 F.3d at 539; *Drennan,* 977 F.2d at 250; *Christopher,* 950 F.2d at 1221. Otherwise, a fiduciary could defeat an employee's standing to bring an ERISA action by duping him into giving up his right to participate in a plan. ERISA should not be construed to

permit the fiduciary to circumvent his ERISA-imposed fiduciary duty in this manner. *Christopher,* 950 F.2d at 1221.

■ We realize that two circuits have rejected this "but for" approach to ERISA standing. *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1536 (10th Cir.) (reasoning that "[t]o say that but for [the employer's] conduct, plaintiffs would have standing is to admit they lack standing"), *cert. denied,* —— U.S. ——, 114 S.Ct. 1391, 128 L.Ed.2d 65 (1994); *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 435 (4th Cir.1986) ("The effect of reading in a "but for" test is to impose participant status on every single employee who but for some future contingency may become eligible."). We believe these circuits read § 1002(7) and the Supreme Court's decision in *Firestone* too strictly. The enforcement provisions of ERISA were meant "to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due participants." S.REP. No. 127, 93d Cong., 2d Sess. 47 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4838, 4871; *Mullins,* 23 F.3d at 668; *Vartanian,* 14 F.3d at 702. The plaintiffs' state law claims in this case were preempted by ERISA because they related to an ERISA plan. *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 138–39, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990). We would clearly frustrate Congress's intent "to remove jurisdictional and procedural obstacles" if we held that ERISA preempts the plaintiffs' state law claims and yet denies them standing to pursue a federal claim. *Vartanian,* 14 F.3d at 702. We therefore hold that so long as a former employee would have been in a class eligible to become a member of the plan but for the fiduciary's alleged breach of duty, he "may become eligible" for benefits under the plan, and is therefore a "participant" under § 1002(7) for the purposes of standing.

This holding is meant to both clarify and slightly expand our holding in *Drennan v. General Motors Corp.,* 977 F.2d 246 (6th Cir.1992). In *Drennan,* the plaintiffs were laid-off employees who terminated their employment relationship with GM by taking a lump sum payment termed a "SUB Buyout." 977 F.2d at 248. Before accepting the SUB Buyout, the class questioned plant management about whether a better lump sum package, VTEP, would ever be available to laid-off employees. After GM misrepresented to them that it would not, the plaintiffs took the SUB Buyout. Shortly thereafter, GM made the VTEP available to laid-off employees after all. *Id.*

In reasoning that the plaintiffs had standing, the *Drennan* panel stated that, "the class members were eligible for such a plan at the time the asserted breach of fiduciary duty occurred and had no future eligibility requirements to fulfill." *Id.* at 250. At first blush, it is hard to see how the plaintiffs in *Drennan* were eligible for the VTEP "at the time the asserted breach of fiduciary duty occurred" in that the plan was not offered to laid-off employees until *after* the plaintiffs had terminated their employment relationship with GM by taking the SUB Buyout. We believe, however, that they were "eligible" in the sense that, prior to the fiduciary breach, they had been members of the class of employees to whom the VTEP was eventually offered.

The case before us presents a somewhat different situation. The plaintiffs here were never members of the class of employees to whom the laid-off workers plans were offered. Indeed, they allege they took the VTEP *precisely because they wanted to avoid* becoming members of that class, in that, they were told, laid-off workers could not receive a VTEP. We do not believe, however, that this factual variation requires a different result. The plaintiffs claim they would have invariably been laid off and thus eligible for the laid-off workers benefits and the window VTEP had GM not made its representations concerning the VTEP. GM does not contest this claim. Thus, there is nothing to break the causal connection between GM's alleged fiduciary breach and the plaintiffs' failure to become members of the laid-off workers plans. Application of "but for" standing is therefore appropriate.

The plaintiffs argue that GM breached its fiduciary duty in two distinct ways: (1) GM told the plaintiffs that laid-off workers could not receive VTEPs when it later turned out that they could; and (2) GM failed to give the plaintiffs notice that the VTEP plan could be amended, leading them to think that it could not be. According to the plaintiffs, but for these fiduciary breaches, they would have taken laid-off status and thus would have participated in the benefits plans available to laid-off workers. Therefore, they have standing as "participants" to bring an action for these benefits. We now, at last, turn to the merits of the plaintiffs' case.

## III.

■ The first part of the plaintiffs' claim is that GM breached its fiduciary duty to them by stating that laid-off workers could not receive a VTEP. The district court determined that this statement was true at the time, in that GM was not considering giving the window VTEP to laid-off workers when it made this representation. The plaintiffs argue, however, that this fact is irrelevant, because an employer can breach its fiduciary duty by making statements that, while true at the time, turn out to be false. We disagree.

■ One of the fiduciary duties which ERISA imposes on plan administrators is the duty "not to make misrepresentations, either negligently or intentionally, to potential plan participants concerning the second offering [of retirement packages]." *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1163–64 (6th Cir.1988). However, this does not impose upon the employer a " 'duty of clairvoyance;' *i.e.*, to predict accurately the future availability of ... benefits." *Id.* at 1164. Thus, "there can be no misrepresentations about a future offering until that point in time ... when serious consideration has been given by the plan administrator ... concerning the implementation of the plan." *Id.; Drennan*, 977 F.2d at 251. The reasoning is obvious. If an employer is not even considering a future offering, then as far as the employer is concerned, the current plan *is* the only one available. By saying so, the employer is telling the truth. To be com-

pletely forthright, an employer who is not considering another plan can only tell employees that a different plan might one day be offered, or it might not; and this is something that should be obvious to employees. Changing circumstances, such as the need to reduce labor costs, might require an employer to sweeten its severance package, and an employer should not be forever deterred from giving its employees a better deal merely because it did not clearly indicate to a previous employee that a better deal might one day be proposed.

The Eleventh Circuit's opinion in *Barnes v. Lacy*, 927 F.2d 539 (11th Cir.), *cert. denied*, 502 U.S. 938, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991), is directly applicable to the facts of this case. In *Barnes*, the employer offered an early retirement package. Two years later, the employer offered a more lucrative package. The plaintiffs, who had taken the first package, brought suit claiming that they would have been eligible for the second package, except they had been misled by the employer's representation that the original plan was a "one-time offer." *Id.* at 541.

The court denied the claim, holding that the employer was not liable because the statements were made in good faith and the statements indicated the employer's actual intent at the time. *Id.* at 544. We have cited *Barnes* with approval, noting that:

> If the employer has truthfully stated that an early retirement plan is a one-time offer, and then later decides to amend the plan, as the plan by its terms provides, for a second offering, no liability attaches to the first statement, nor to the employer's silence during the time that the decision to amend is being made.

*Drennan*, 977 F.2d at 251 n. 2 (citing *Barnes*, 927 F.2d at 543–44).

In this case, GM truthfully stated that laid-off employees were not eligible for a VTEP. Eight months later, GM had a change of mind, and decided to offer the window VTEP to these workers after all. Because GM was not seriously considering the second offer when it told the plaintiffs that laid-off workers were ineligible for the VTEP, "no liability

attaches to the first statement." *Id.* GM made no misrepresentation, and therefore, did not breach its fiduciary duty.[3]

### IV.

■ The plaintiffs also claim that GM breached its fiduciary duty by not giving them notice that it reserved the right to amend the VTEP plan. They argue that this fiduciary duty derives from § 402 of ERISA, which states that "[e]very employee benefit plan shall ... (3) provide a procedure for amending such a plan, and for identifying the persons who have the authority to amend the plan." 29 U.S.C. § 1102(b). This provision insures " 'against the possibility that the employee's expectation of the benefit would be defeated' by an unanticipated amendment of a welfare benefit plan whose benefits employees have come to take for granted." *Adams v. Avondale Indus. Inc.,* 905 F.2d 943, 949 (6th Cir.) (citing *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989)), *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990). In support of their claim, the plaintiffs point out that the memoranda of understanding specifically describing the VTEP which the plaintiffs received did not state that it could be amended.

■ Although there is some question whether a violation of § 1102 can ever give rise to a substantive remedy, *see Adams,* 905 F.2d at 949 (declining to create a substantive remedy for violations of § 1102 without detrimental reliance), we need not decide the issue at this time. Section 1102 requires that ERISA plans fulfill a notice requirement. The plaintiffs claim that the VTEP plan did not fulfill this requirement, thus giving rise to liability. As our decision in *Sherrod* made clear, however, the VTEP plan is not governed by ERISA. Thus, even if GM did amend the VTEP plan, it did not breach any fiduciary duty ERISA might impose by virtue of § 1102.[4]

### V.

In addition to claiming that GM breached its fiduciary duty, the plaintiffs also claim that GM should be estopped, either on a theory of promissory estoppel or equitable estoppel, from treating the plaintiffs differently from those employees who received SUB benefits, health insurance, GIS benefits and a window VTEP. Before reaching the merits of this claim, we must decide which, if either, of these claims was raised in the court below.

■ In their First Amended Complaint, the plaintiffs pled a state law cause of action based on promissory estoppel. *J–A* at 14–15. As we have stated, the district court granted summary judgment on this claim on March 25, 1993, finding that it was preempted by federal law. *District Court Order* at 9 (3–25–93). The plaintiffs then filed a Second Amended Complaint, raising the fiduciary breach of duty claim under ERISA, and asking for "all other legal and equitable relief to which the plaintiffs are entitled." *J–A* at 6.

In their Proposed Findings of Fact and Conclusions of Law, given to the district

---

**3.** The plaintiffs argue that *Drennan* and *Berlin* do not apply to the present case. Instead, they argue that the court should apply *Lockrey v. Leavitt Tube Employees' Profit Sharing Plan,* 766 F.Supp. 1510 (N.D.Ill.1991). *Lockrey,* however, never addressed the issue of whether the employer had breached its fiduciary duty. Rather, the court in that case held that the plaintiff could recover under an estoppel theory. *Id.* at 1519.

**4.** The plaintiffs' claim also fails if we consider the window VTEP an amendment to the laid-off workers benefits plans, for the plaintiffs clearly had notice that these plans could be amended. On the front cover of the memorandum describing the laid-off workers plans, it states:

THIS SUMMARY PRESENTS GENERAL INFORMATION AS SET FORTH IN THIS BENEFIT PLAN PROVISIONS OF THE 1984 GM–UAW NATIONAL AGREEMENT. THESE PROVISIONS ARE SUBJECT TO CHANGE AS A RESULT OF SUBSEQUENT AGREEMENTS OR CHANGES IN THE APPLICABLE LAW.

Yet another way of viewing the case is that the window VTEP was a completely separate offering, independent of both the original VTEP offering and the laid-off workers plans. The plaintiffs' claim also fails under this analysis. As we stated before, GM has no duty to tell employees that it might someday offer another benefit unless it is seriously considering that other benefit at the time. *Drennan,* 977 F.2d at 251, *Berlin,* 858 F.2d at 1164.

court before trial, the plaintiffs raised for the first time their equitable estoppel claim, stating that "equitable estoppel precludes a party from asserting certain facts when that party, by its conduct, has induced another to change his position in good faith reliance upon that conduct." *Plaintiffs' Proposed Findings of Fact and Conclusions of Law* at 9. At trial, the plaintiffs raised this equitable estoppel claim once again in their opening statement, stating that "[t]he ... issue is whether or not General Motors should be equitably estopped under the federal common law of ERISA from changing the rules for VTEP eligibility and applying them in a retroactive fashion." *J–A* at 449. In its opening statement, GM objected to the introduction of the equitable estoppel claim, arguing that it had never been pled. *J–A* at 469. The district court did not rule on this objection.

In its opinion denying the plaintiffs relief, the district court did not mention equitable estoppel. Rather, it denied relief on the *promissory* estoppel theory, citing only state law, reasoning: "The elements of promissory estoppel include false representations upon which the plaintiffs detrimentally relied. In the absence of any such incorrect representations, a cause of action for promissory estoppel cannot be maintained." *J–A* at 46. (citations omitted.) We are not sure why the district court ruled this way. The plaintiffs had never mentioned an ERISA-based promissory estoppel claim, and the district court had already ruled in its March 25th Order that the state promissory estoppel claim was preempted. Nevertheless, (and perhaps seizing on the district court's ambiguous ruling), the plaintiffs on appeal argue that we should hold that GM is estopped from treating them differently than the laid-off workers on the theory of promissory estoppel.

However, despite the district court's ambiguous ruling, the fact remains that the plaintiffs never raised a federal promissory estoppel claim in the court below, and we do not believe this claim merits our making an exception to the general rule that arguments on appeal must be presented first to the district court. *Brown v. Crowe,* 963 F.2d

895, 897 (6th Cir.1992). We therefore do not address the promissory estoppel claim.

 This brings us to the equitable estoppel claim. GM contends that this claim cannot be raised on appeal because it was never pled. However, "a party has presented an issue in the trial court if that party has raised it either in the pleadings or the pretrial order, or if the parties have tried the issue by consent.... The raising party must present the issue so that it places the opposing party and the court on notice that a new issue is being raised." *Portis v. First Nat'l Bank,* 34 F.3d 325, 331 (5th Cir.1994) (citations omitted). Here, there was no pretrial order and GM objected to the equitable estoppel claim in its opening statement, receiving no answer from the district court. Nevertheless, the defendant and the district court clearly had notice of the equitable estoppel claim. The theory was presented to the district court in both the plaintiffs' Proposed Findings of Fact and Conclusions of Law, as well as in their opening statement. Furthermore, the merits of the equitable estoppel claim were actually addressed by the district court in its ruling on promissory estoppel, when it held that GM had not made any false representations upon which the plaintiffs detrimentally relied. Given the circumstances of this case, we believe that all of this was sufficient to raise the issue at trial. It can therefore be raised on appeal. ROBERT MARTINEAU, MODERN APPELLATE PRACTICE § 3.1 (1983). We will therefore address the merits of the plaintiffs' equitable estoppel claim.

 According to our decision in *Armistead v. Vernitron Corp.,* 944 F.2d 1287 (6th Cir.1991), the elements of equitable estoppel in an ERISA action are as follows:

1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct towards the party asserting the estoppel such that the latter has a right to believe that the former's conduct be so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and

justifiable reliance by the party asserting estoppel on the representation.

*Id.* at 1298.

■ The plaintiffs argue that equitable estoppel should be applied in the present case because "the company believed that it had the right to change [the VTEP] plan, and the plaintiffs were not aware of that fact." *Reply Brief* at 17. Therefore, presumably, GM should be estopped from changing its position with regard to the VTEP plan. Estopping GM from changing its position in this regard, however, could not result in the plaintiffs receiving their requested relief, laid-off workers benefits. It could only result in changes in the VTEP plan. Thus, there is no connection between GM's alleged misrepresentation concerning the VTEP plan and the remedy for which the plaintiffs ask. For that reason, we reject the plaintiffs' equitable estoppel claim.

## VI.

Accordingly, we AFFIRM the judgment of the district court.