72 F.3d 130
 Pens. Plan Guide P 23916N
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
T. Edmond MOLONEY, et al., Plaintiffs-Appellants,
v.
FORD MOTOR COMPANY, Defendant-Appellee.
 No. 94-3487.
 United States Court of Appeals, Sixth Circuit.
 Oct. 25, 1995.
 
 BEFORE: RYAN and DAUGHTREY, Circuit Judges, and HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 The plaintiffs-appellants, five Ford employees at its Sandusky, Ohio plant, brought this action based on claims under both ERISA and state law. They allege that Ford Motor Company violated its fiduciary duties as the administrator of a severance plan, in violation of 29 U.S.C. Sec. 1104, and discriminated against them for the purpose of interfering with the attainment of ERISA benefits, in violation of 29 U.S.C. Sec. 1140. The plaintiffs also allege, in the alternative, a state law claim of detrimental reliance based on representations made to them by Ford. The plaintiffs appeal the grant of summary judgment by the magistrate judge, who heard the case by consent of the parties, based on his finding that the plaintiffs were not "participants" in the severance plan and thus not entitled to ERISA's protections. The plaintiffs also appeal the lower court's decision that ERISA preempts their state law claim. Because we determine that the plaintiffs do not have standing to bring this action, and because ERISA preempts the plaintiffs' state law claim, we AFFIRM the decision of the court below.
 
 I.
 
 2
 The plaintiffs were long-term salaried employees of Ford and were eligible to receive retirement benefits from Ford. In late 1992 or early 1993, each plaintiff met with Gary Cook, Ford's personnel manager for salaried employees, to inquire about his retirement options. Plaintiffs Moloney and Pumphrey asked Cook about the existence of a severance plan, of which they had heard rumors. Cook denied the existence of such a plan. Plaintiff Johannsen met with Cook in late 1992, also to discuss retirement options. At that time, he did not specifically ask Cook about a severance plan, nor did Cook volunteer any information. Johannsen retired on April 1, 1993, but continued working at Ford as a "supplemental employee." During this period, Johannsen heard about a new severance plan from co-workers and approached his supervisor, Jack Dutton, to inquire about its existence. Dutton denied the existence of any such plan. Plaintiffs Hohler and Maloney met with Cook to discuss their retirement options in late 1992. Cook failed to mention the plan to either employee. Maloney also discussed his retirement with Ron Gulas, Maloney's supervisor, who similarly did not mention anything about a severance plan. Maloney remains a supplemental employee at Ford.
 
 
 3
 In fact, Ford had advised its personnel management staff on November 2, 1992, that a new plan was available to reduce Ford's workforce, called the Voluntary Resignation from Service Plan, or VRS Plan. According to the staff memo, the VRS Plan was designed to reduce the number of employees "in selected Company organizations," while minimizing the need for layoffs, and to "increas[e] attrition of certain employees with limited ability for advancement." Employees participating in the VRS Plan would receive their regular retirement benefits plus, among other things, a lump-sum severance payment equalling 1-9 months of their salary, depending on their length of service. It is that lump-sum payment that plaintiffs now seek.
 
 
 4
 The VRS Plan has two components: a Group Program, for employees "selected by management" who are "member[s] of a group affected by a reduction in force," and an Individual Separation Program, which is offered "at management's discretion" to certain individuals. The plaintiffs apparently claim under the Individual Separation Program, as they make no claim that they belonged to a group affected by a reduction in force.
 
 
 5
 For the Individual Separation Program, an employee must satisfy several requirements before he or she may qualify to be asked to participate in the VRS Plan, which covers "an employee with limited ability for advancement," "who is performing at a level that does not justify termination," and who either "is occupying a developmental position desirable for another employee who is expected to advance beyond that position" or "is assessed to lack skills needed to perform changing job requirements." Those employees who meet these criteria may be asked, at Ford management's discretion, to participate in the VRS Plan. Even with regard to those who are asked to participate, Ford retains the right to revoke, at any time prior to the employee's termination date, the offer of VRS participation.
 
 
 6
 The plaintiffs allege that in the past when Ford offered severance plans, it notified all employees of those plans. However, the plaintiffs' affidavits do not state that "similar" plans had been offered previously, and they failed to proffer any evidence of those earlier plans. Indeed, a Ford management memo regarding the VRS Plan states that "management is provided greater flexibility, when compared to ... early retirement programs offered in the past ..., in the ability to select candidates to be offered separation." Moreover, there are numerous other references in various plan documents that emphasize "management discretion" in the selection of employees to participate in the VRS Plan.
 
 
 7
 In granting summary judgment to the defendant, the magistrate judge concluded that "[i]n light of the entirely optional nature of the plan, the plaintiffs d[id] not have a colorable claim ... [there being] no indication whatsoever that plaintiffs were ever considered for th[e] opportunity [to participate in the VRS Plan], or that they would have been considered had they been aware of the program and expressed a desire to share in it." In short, the trial judge found that they were not "participants" (as that term is defined in 29 U.S.C. Sec. 1002) in the severance plan.
 
 II.
 
 8
 We address first the plaintiffs' contention that Ford violated its fiduciary duties as set forth in 29 U.S.C. Sec. 1104. Section 502(a) of ERISA, 29 U.S.C. Sec. 1132(a), ERISA's civil enforcement provision, authorizes suits to redress such violations. However, Sec. 1132(a) limits those who can maintain suits under the statute to "participants", "beneficiaries," or "fiduciaries." The plaintiffs do not claim to be fiduciaries or beneficiaries of the VRS Plan and, thus, must demonstrate that they are "participants" under 29 U.S.C. Sec. 1002 in order to have standing to bring this action. A participant is defined as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer...." 29 U.S.C. Sec. 1002(7).
 
 
 9
 In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court further defined this term, stating:
 
 
 10
 In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.... "A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.' "
 
 
 11
 Id. at 117-18 (citations omitted). As this court has previously noted, the Firestone definition of the ERISA term "participant" was developed outside of the standing context. See Drennan v. General Motors Corp., 977 F.2d 246, 250 (6th Cir.1992), cert. denied, 113 S.Ct. 2416 (1993). Thus, Firestone should not be read to "reduce the standing question to a straightforward formula applicable in all cases." Swinney v. General Motors Corp., 46 F.3d 512, 518 (6th Cir.1995) (quoting Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1221 (5th Cir.), cert. denied, 113 S.Ct. 68 (1992)).
 
 
 12
 In construing Sec. 1002(7) of ERISA in conjunction with traditional standing concepts, we, along with a majority of circuits, have developed an exception to the general rule that a person who terminates his right to belong to a plan cannot be a "participant" in the plan. Specifically, if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach. Mullins v. Pfizer, 23 F.3d 663, 668 (2d Cir.1994); Vartanian [v. Monsanto Co., 14 F.3d 697,] 702 [ (1st Cir.1994) ]; Astor [v. International Business Mach. Corp., 7 F.3d 533,] 539 [ (6th Cir.1993) ]; Drennan, 977 F.2d at 250; Christopher, 950 F.2d at 1221. Otherwise, a fiduciary could defeat an employee's standing to bring an ERISA action by duping him into giving up his right to participate in a plan. ERISA should not be construed to permit the fiduciary to circumvent his ERISA-imposed fiduciary duty in this manner.
 
 
 13
 Swinney, 46 F.3d at 518-19. Thus,
 
 
 14
 so long as a former employee would have been in a class eligible to become a member of the plan but for the fiduciary's alleged breach of duty, he "may become eligible" for benefits under the plan, and is therefore a "participant" under Sec. 1002(7) for the purposes of standing.
 
 
 15
 Id. 46 F.3d at 519.
 
 
 16
 The plaintiffs fail to meet even this "but for" test. Although they allege that Ford representatives misled them as to the existence of a severance plan, the plaintiffs fail to demonstrate a threshold eligibility for the plan. In this respect, their affidavits are insufficient as a matter of law.
 
 
 17
 Once the party moving for summary judgment has met its initial burden of showing the absence of any genuine issue of material fact (as Ford has done by showing that the plaintiffs have no colorable claim to vested benefits and thus cannot recover under ERISA), the non-movant "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Even if the non-moving party offers evidence in response to a summary judgment motion, summary judgment is still warranted if there is no evidence on which the jury could reasonably find for the plaintiff. Id. at 252.
 
 
 18
 Affidavits containing "nothing more than rumors, conclusory allegations and subjective beliefs ... are wholly insufficient evidence" to establish a claim "as a matter of law." Mitchell v. Toledo Hospital, 964 F.2d 577, 585 (6th Cir.1992). "Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded." State Mutual Life Assurance Co. v. Deer Creek Park, 612 F.2d 259, 264 (6th Cir.1979) (quoted in Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 968 (6th Cir.1991)).
 
 
 19
 Only one plaintiff, Moloney, attempts to demonstrate that he fulfilled the minimal requirements for consideration for the VRS Individual Separation Program, by means of the following statement:
 
 
 20
 I would have qualified for these benefits, since the documents specifically state that it was to apply to employees with limited ability for advancement. I believe I had no prospects for advancement in light of my age and my expertise in the field of metal stamping which was being phased out at the Sandusky Ford plant.
 
 
 21
 Moloney also stated that the Sandusky plant was "switching from metal stamping to plastic injection molding" and that his skills were not readily transferable to the latter type of work. While these assertions address the first and third requirements, nothing is said about the second prerequisite, that the employee be performing at a level that does not justify termination. Moloney's affidavit also notes that he knew other employees who were contemplating retirement but, upon learning of the new VRS Plan, held out for and received VRS benefits. He does not name these employees, nor demonstrate that they were similarly situated.
 
 
 22
 The affidavits of plaintiffs Hohler, Pumphrey, Maloney, and Johannsen do not even address the VRS Plan prerequisites, although each echoes Moloney's mention of other retirees who received VRS benefits (again without naming specific individuals or demonstrating similar circumstances).
 
 
 23
 The plaintiffs have the burden of demonstrating that they were eligible to participate in the VRS Plan, "but for" Ford's misrepresentations. Having failed to do so, the plaintiffs do not have standing to bring this action. It follows that the lower court did not err in granting summary judgment to Ford.
 
 
 24
 The plaintiffs raise a second claim, that Ford discriminated against them in not offering them participation in the VRS Plan, in violation of 29 U.S.C. Sec. 1140. Because the plaintiffs do not meet the necessary threshold standing requirements of 29 U.S.C. Sec. 1132, however, we need not address their Sec. 1140 argument.
 
 
 25
 Finally, the plaintiffs advance a state law claim, as an alternative argument in the event that their ERISA claims fail. In this regard, however, the plaintiffs confuse an inability to recover under ERISA with exemption from its preemptive provisions.
 
 
 26
 Although the lower court did not explicitly find that the VRS Plan was covered by ERISA, we find that it does indeed fall within ERISA's broad reach. Twenty-nine U.S.C. Sec. 1003 provides:
 
 
 27
 (a) Except as provided in subsection (b) of this section and in sections 1051, 1081, and 1101[1] of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained--
 
 
 28
 (1) by any employer engaged in commerce or in any industry or activity affecting commerce; ...
 
 
 29
 Id. Twenty-nine U.S.C. Sec. 1002(3) defines "employee benefit plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." Twenty-nine U.S.C. Sec. 1002(1) defines "employee welfare benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants ..., through the purchase of insurance or otherwise, (A) ... benefits in the event of ... unemployment...."
 
 
 30
 This court has recently found a severance program to be outside the ambit of ERISA. See Sherrod v. General Motors Corp., 33 F.3d 636 (6th Cir.1994):
 
 
 31
 An employee benefit is regulated by ERISA only if it is administered through a "plan, fund, or program" established to provide benefits under any of the covered categories. In determining whether a "plan, fund, or program" exists, a court should focus on whether the employee benefit requires an administrative scheme to execute....
 
 
 32
 The pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.
 
 
 33
 Kulinski [v. Medtronic Bio-Medicus, Inc. ], 31 F.3d [254,] 257 [ (8th Cir.1994) ].
 
 
 34
 Once the VTEP [severance plan] is offered to workers in a particular JOBS Bank, the eligible employees and the amount of the severance benefit are predetermined through the collective bargaining process; therefore, GM does not exercise any discretion over the execution of the VTEP. Accordingly, we agree ... that the VTEP is not an ERISA employee welfare plan.
 
 
 35
 Id. at 638-39.
 
 
 36
 The Ford VRS Plan, by contrast, involves a separate administrative scheme[2] and considerable discretion. We conclude that it is covered by ERISA.
 
 
 37
 Twenty-nine U.S.C. Sec. 1144(a) preempts "any and all" state law claims "insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. As Justice O'Connor observed in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), "the express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern'." Id. at 45-46 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)). This court "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir.1991), cert. dismissed, 113 S.Ct. 2 (1992). A state law claim seeking "recovery of benefits from the ... plan" is "at the very heart of issues within the scope of ERISA's exclusive regulation" and thus is clearly preempted by ERISA. Id.
 
 
 38
 We conclude that summary judgment was proper on plaintiffs' state law claim of detrimental reliance, because that claim is clearly preempted by ERISA.
 
 
 39
 For the reasons stated above, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Hon. Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 29 U.S.C. Secs. 1051, 1081, and 1101 exempt certain types of plans from certain aspects of ERISA's coverage, but retain these types of plans within ERISA's overall ambit
 
 
 [2]
 In addition to a one-time severance payment, participants are entitled to professional reemployment assistance and the continuation of certain benefit programs, based on various individualized formulae. The plan also contains retirement "grow-in" provisions for certain participants not eligible for retirement. This scheme requires far more than the one-time disbursement in Sherrod