_____

No. 95-4029MN
_____

Dianne L. Shea, individually            *
and as trustee for the heirs of         *
Patrick Joseph Shea, decedent;          *
individually and derivatively           *
on behalf of participants in            *
the Seagate Group Health Plan,          *
                                        *
                    Appellant,          *
                                        *   Appeal from the United States
        v.                              *   District Court for the District
                                        *   of Minnesota.
Sidney Esensten; Jeffrey A.             *
Arenson; Family Medical Clinic,         *
now known as Fairview Clinics,          *
a Minnesota non-profit                  *
corporation; Medica, a                  *
Minnesota non-profit                    *
corporation,                            *
                                        *
                    Appellees.          *
                            _____

                Submitted:  November 21, 1996

                Filed:  February 26, 1997
                            _____

Before FAGG, WOLLMAN, and HANSEN, Circuit Judges.
                            _____

FAGG, Circuit Judge.


        After being hospitalized for severe chest pains during an overseas
business trip, Patrick Shea made several visits to his long-time family
doctor.  During these visits, Mr. Shea discussed his extensive family
history of heart disease, and indicated he was suffering from chest pains,
shortness of breath, muscle tingling, and dizziness.  Despite all the
warning signs, Mr. Shea's doctor said a referral to a cardiologist was
unnecessary.  When Mr. Shea's symptoms did not improve, he offered to pay
for the cardiologist himself.  At that point, Mr. Shea's doctor persuaded
Mr. Shea, who

was then forty years old, that he was too young and did not have enough symptoms to justify a visit to a cardiologist. A few months later, Mr. Shea died of heart failure.

Mr. Shea had been an employee of Seagate Technologies, Inc. (Seagate) for many years. Seagate provided health care benefits to its employees by contracting with a health maintenance organization (HMO) known as Medica. As part of its managed care product, Medica required Seagate's employees to select one of Medica's authorized primary care doctors. Mr. Shea chose his family doctor, who was on Medica's list of preferred doctors. Under the terms of Medica's policy, Mr. Shea was insured for all of his medically necessary care, including cardiac care. Before Mr. Shea could see a specialist, however, Medica required Mr. Shea to get a written referral from his primary care doctor. Unknown to Mr. Shea, Medica's contracts with its preferred doctors created financial incentives that were designed to minimize referrals. Specifically, the primary care doctors were rewarded for not making covered referrals to specialists, and were docked a portion of their fees if they made too many. According to Mr. Shea's widow Dianne, if her husband would have known his doctor could earn a bonus for treating less, he would have disregarded his doctor's advice, sought a cardiologist's opinion at his own expense, and would still be alive today.

Initially, Mrs. Shea brought a wrongful death action in Minnesota state court. Mrs. Shea alleged Medica's fraudulent nondisclosure and misrepresentation about its doctor incentive programs limited Mr. Shea's ability to make an informed choice about his life-saving health care. Medica removed the case to federal court, contending Mrs. Shea's tort claims were preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144 (1994). Mrs. Shea filed a motion to remand, but the district court denied the motion. Mrs. Shea then amended her complaint to assert Medica's behind-the-scenes efforts to reduce

covered referrals violated Medica's fiduciary duties under ERISA.  See id. §§ 1002(21), 1104(a)(1).  Believing ERISA does not require an HMO to disclose its doctor compensation arrangements because they are not "material facts affecting a beneficiary's interests," the district court dismissed Mrs. Shea's amended complaint for failing to state a claim.  See Fed. R. Civ. P. 12(b)(6).  Mrs. Shea appeals.  Having construed the pleaded facts in the light most favorable to Mrs. Shea, we reverse the judgment of the district court.  See Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993).

Because our removal jurisdiction is intertwined with the district court's preemption ruling, we must first consider whether ERISA displaces Mrs. Shea's tort claims against Medica.  See Schroeder v. Phillips Petroleum Co., 970 F.2d 419, 420 (8th Cir. 1992) (per curiam).  ERISA supersedes state laws insofar as they "relate to any employee benefit plan."  29 U.S.C. § 1144(a).  To this end, the language of ERISA's preemption clause sweeps broadly, embracing common law causes of action if they have a connection with or a reference to an ERISA plan.  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987).  Here, Medica administered Seagate's employee benefit plan, and Mrs. Shea maintains Medica wrongfully failed to disclose a major limitation on her husband's health care benefits.  Along these lines, we have held that claims of misconduct against the administrator of an employer's health plan fall comfortably within ERISA's broad preemption provision.  See Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc., 999 F.2d 298, 301-04 (8th Cir. 1993); see also Howe v. Varity Corp., 36 F.3d 746, 752-53 (8th Cir. 1994) (ERISA preempts state fraudulent misrepresentation claims), aff'd, 116 S. Ct. 1065 (1996).

After considering the factors that guide our inquiry, see Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc., 947 F.2d 1341, 1344-45 (8th Cir. 1991), we conclude the district court correctly decided that ERISA preempts Mrs. Shea's state-law claims.

The outcome of Mrs. Shea's lawsuit would clearly affect how Seagate's ERISA-regulated benefit plan is administered, and if similar cases are brought in state courts across the country, ERISA plan administrators will inevitably be forced to tailor their plan disclosures to meet each state's unique requirements. This result would be at odds with Congress's intent to ensure "the nationally uniform administration of employee benefit plans." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 115 S. Ct. 1671, 1677-78 (1995). Thus, we agree with the district court that Mrs. Shea's case was removable to federal court. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 66-67 (1987) (ERISA preemption supports removal); Anderson v. Humana, Inc., 24 F.3d 889, 891 (7th Cir. 1994) (plan participant's attacks on HMO's incentive structure were both preempted and removable); Rodriguez v. Pacificare of Texas, Inc., 980 F.2d 1014, 1016-17 (5th Cir. 1993) (state-law claims based on HMO's refusal to provide referral letter were properly preempted and removed).

Having decided Mrs. Shea's case belongs in federal court, we turn to Medica's contention that Mrs. Shea lacks standing to pursue an ERISA remedy. ERISA authorizes current plan participants to assert a claim for breach of fiduciary duty. See Adamson v. Armco, Inc., 44 F.3d 650, 654 (8th Cir.), cert. denied, 116 S. Ct. 85 (1995). According to Medica, Mr. Shea was no longer a Seagate plan participant after he died. See 29 U.S.C. § 1002(7). Contrary to Medica's view, we have held that if the fiduciary's alleged ERISA violation caused the former employee to lose plan participant status, the former employee will nonetheless have standing to challenge the fiduciary violation. See Adamson, 44 F.3d at 654-55; see also Swinney v. General Motors Corp., 46 F.3d 512, 518-19 (6th Cir. 1995); Vartanian v. Monsanto Co., 14 F.3d 697, 702 (1st Cir. 1994). Mrs. Shea contends that, but for Medica's failure to disclose Mr. Shea's doctor's financial stake in discouraging covered referrals to specialists, her husband would still be alive and a current plan participant. Stated another way, Mr. Shea did

not voluntarily relinquish his rights in the Seagate plan.  See Adamson, 44 F.3d at 655.  We are persuaded that Mrs. Shea, as the representative of Mr. Shea's estate, has standing to assert her husband's ERISA claims.  Any other result would reward Medica for giving its preferred doctors an incentive to make more money by delivering cheaper care to the detriment of patients like Mr. Shea, and "ERISA should not be construed to permit the fiduciary to circumvent [its] ERISA-imposed fiduciary duty in this manner." Swinney, 46 F.3d at 518-19; see also Varity Corp. v. Howe, 116 S. Ct. 1065, 1068 (1996) (former plan participants tricked by a breach of a fiduciary duty have standing to sue).

With the jurisdictional challenges out of the way, we next consider whether Medica had a duty to disclose its referral-discouraging approach to health care.  ERISA requires plan fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1).  In addition to ERISA's express disclosure requirements, see 29 U.S.C. §§ 1021-1031, "`Congress invoked the common law of trusts to define the general scope of [a fiduciary's] . . . responsibility.'"  Varity Corp., 116 S. Ct. at 1070 (quoting H.R.Rep. No. 93-533, at 3-5, 11-13 (1973)).  In affirming our decision in Varity Corp., the Supreme Court concluded that ERISA fiduciaries must comply with the common law duty of loyalty, which includes the obligation to deal fairly and honestly with all plan members.  See id. at 1074-75.  Although the Supreme Court found it unnecessary to reach the issue, our earlier opinion made clear that the duty of loyalty requires an ERISA fiduciary to communicate any material facts which could adversely affect a plan member's interests.  See Varity Corp., 36 F.3d at 754.  "The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA."  Eddy v. Colonial Life Ins. Co. of Am., 919 F.2d 747, 750 (D.C. Cir. 1990).

Although the district court acknowledged Medica's duty of loyalty, the court felt the compensation arrangements between Medica and its doctors were not material facts requiring disclosure. We disagree. From the patient's point of view, a financial incentive scheme put in place to influence a treating doctor's referral practices when the patient needs specialized care is certainly a material piece of information. This kind of patient necessarily relies on the doctor's advice about treatment options, and the patient must know whether the advice is influenced by self-serving financial considerations created by the health insurance provider. The district court believed Seagate's employees already realized their doctors' pocketbooks would be adversely affected by making referrals to outside specialists. Even if the district court is right, Seagate's employees still would not have known their doctors were penalized for making too many referrals and could earn a bonus by skimping on specialized care. Thus, we conclude Mr. Shea had the right to know Medica was offering financial incentives that could have colored his doctor's medical judgment about the urgency for a cardiac referral. Health care decisions involve matters of life and death, and an ERISA fiduciary has a duty to speak out if it "knows that silence might be harmful." Bixler v. Central Penn. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993); see Restatement (Second) Of Trusts § 173 cmt. d (1959). Indeed, in this case the danger to the plan participant's well being was created by the fiduciary itself. If Mr. Shea had been aware of his doctor's financial stakes, he could have made a fully informed decision about whether to trust his doctor's recommendation that a cardiologist's examination was unnecessary.

In sum, we believe Mrs. Shea has stated a claim against Medica for breaching the fiduciary obligation to disclose all the material facts affecting her husband's health care interests. When an HMO's financial incentives discourage a treating doctor from providing essential health care referrals for conditions covered under the

plan benefit structure, the incentives must be disclosed and the failure to do so is a breach of ERISA's fiduciary duties.  We thus reverse the district court's order dismissing Mrs. Shea's amended complaint for failure to state a claim on which relief can be granted and remand the case to the district court for further proceedings.  We decline Medica's invitation to consider several remedy-related issues that were not addressed in the district court's ruling.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.