*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0368P (6th Cir.)
File Name: 02a0368p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____



LOUISE CASSIDY, et al.,
     *Plaintiffs-Appellants,*

    *v.*

AKZO NOBEL SALT, INC.,
     *Defendant-Appellee.*

No. 01-1580

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-70023—Robert H. Cleland, District Judge.

Argued: September 19, 2002

Decided and Filed: October 21, 2002

Before: KENNEDY and MOORE, Circuit Judges; DOWD,
District Judge.

_____

*The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Joshua A. Lerner, COHEN, LERNER & RABINOVITZ, Royal Oak, Michigan, for Appellants. Timothy H. Howlett, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellee. **ON BRIEF:** Steven Z. Cohen, COHEN, LERNER & RABINOVITZ, Royal Oak, Michigan, for Appellants. Timothy H. Howlett, Diana L. Khachaturian, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellee.

---

**OPINION**

---

KENNEDY, Circuit Judge. Plaintiffs-appellants Louise Cassidy, et al., appeal the district court's summary judgment for defendant, Akzo Nobel Salt, Inc., ("ANSI"), on plaintiffs' claim that they are contractually entitled to benefits under ANSI's severance pay plan. Jurisdiction is based on diversity of citizenship.

ANSI's termination plan states that regular full time employees who are "released" will receive severance pay. The policy defines "release" as follows:

Release is a permanent separation initiated by the company due to lack of work, an economic reduction in the work force, the employee's inability to perform satisfactorily the duties of the position, incompatibility, etc. Lack of work may occur as the result of reorganization, job abolishment, etc.

In April of 1997, ANSI sold its assets to Cargill, Inc., with a promise that Cargill would employ substantially all the employees of ANSI. Plaintiffs are all ANSI employees who accepted offers for substantially similar positions with Cargill. All continue to work for Cargill. They allege that

term "etc." does not bring them within the ANSI severance policy.

### III.

Because the plain language of the severance plan is unambiguous, there is no need to consider extrinsic evidence presented by the plaintiffs and defendant in this case. *Wulf*, 26 F.3d at 1376 (noting that federal courts may look to extrinsic evidence only if plan documents are ambiguous). The district properly granted the defendant's motion for summary judgment, and we therefore affirm the judgment of the district court.

under the terms of ANSI's severance plan, their transfer from employment with ANSI to Cargill was a "release" entitling them to severance benefits from ANSI. They claim breach of contract for ANSI's failure to make those payments.

The district court granted ANSI's motion for summary judgment, holding that the plain and unambiguous language of the plan did not entitle plaintiffs to severance benefits because their transfer of employment to Cargill was not due to "lack of work" or an "economic reduction in the workforce" as specifically required by the terms of the plan.[1]

Plaintiffs raise two issues on appeal: (1) whether the severance plan is a welfare benefit plan under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, triggering federal common law rather than state contract law principles; (2) whether there is a genuine issue of material fact as to the proper interpretation of the contract.

### I.

The district court did not decide whether or not the severance plan is a employee welfare benefit plan under ERISA, reasoning that "general rules" of contract interpretation apply regardless.  This is an imprecise statement.  When interpreting ERISA plans, federal courts apply "general rules" of contract law as part of the federal common law. *See, e.g., Hunter v. Caliber Systems, Inc.*, 220 F.3d 702, 712 (6th Cir. 2000); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998).  The federal common law may draw upon state law principles, but state law is not controlling authority.  Interpreting a non-ERISA contract claim requires federal courts to look only to state law principles, and has nothing to do with federal common law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).  Because the fundamental legal framework differs for ERISA and non-

---

[1]The conditions of "inability to perform satisfactorily" and "incompatibility" are not at issue here.

ERISA plans, the question of whether the ANSI severance pay benefit is part of an ERISA plan should be decided.

ERISA defines an "employee welfare benefit plan" as "any plan . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . (A) benefits in the event of . . . unemployment . . . or (B) any benefit described in section 186(c) of this title." 29 U.S.C. § 1002(1).

Severance plans are included in the definition of 29 U.S.C. § 1002(1)(B). *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1409 (6th Cir. 1996). Section 302(c) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 186(c), refers to severance benefits, and § 1002(1)(B) incorporates that reference into ERISA's definition of "employee welfare benefit plan." Additionally, the Supreme Court has specifically noted that "plans to pay employees severance benefits, which are payable *only* upon termination of employment, are employee welfare benefit plans." *Massachusetts v. Morash*, 490 U.S. 107, 116 (1989).

Nonetheless, this circuit has held that not all severance pay plans are ERISA plans. We have looked to the nature of the plan to distinguish ERISA from non-ERISA plans. *Swinney v. General Motors Corp.*, 46 F.3d 512, 517 (6th Cir. 1995) ("The hallmark of an ERISA benefit plan is that it requires 'an ongoing administrative program to meet the employer's obligation.'") (quoting *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11-12 (1987)). The degree of discretion retained by the employer over distribution of benefits is one important factor in deciding whether a severance plan is an ERISA plan. For example, plans in which benefits are predetermined or which involve "[s]imple or mechanical determinations" have been found not to be ERISA plans. *Sherrod v. General Motors Corp.*, 33 F.3d 636, 638-39 (6th Cir. 1994). On the other hand, if to determine benefits the employer must "analyze each employee's particular circumstances in light of the appropriate criteria," the severance plan is probably an ERISA plan. *Id*. Another important factor is whether the delivery of benefits creates an

### B.  Economic Reduction in the Workforce

The plain meaning of "economic reduction in the workforce" in this particular context does not encompass a transfer of position to a successor corporation where the employees faced no threat of unemployment. The phrase "reduction in workforce" is most commonly understood to cover situations in which a poor economic outlook for an employer forces layoffs. *See Lesman v. Ransburg Corp.*, 719 F. Supp. 619, 621 (W.D. Mich. 1989) (holding that a plan providing severance pay for "reduction in work force" "simply did not contemplate the effect of a sale of a business on the availability of severance pay."), *aff'd*, 911 F.2d 732 (6th Cir. 1990); *Allen v. Adage, Inc.*, 967 F.2d 695, 702 (1st Cir. 1992) (noting that "whatever the exact ramifications of the highly nuanced phrase 'reduction in force,' that term would rarely be thought to cover, for severance pay purposes, the selling of a division to another company under circumstances in which the workforce is . . . doing roughly comparable work for roughly comparable wages."). *Cf. Trotter v. Amalgamated Assoc. of Street Elec. Ry. & Motor Coach Employees of Am.*, 309 F.2d 584, 586 (6th Cir. 1962) (interpreting the phrase "reduction in force" in a union constitution to exclude the sale of employer where employees retained steady employment), *cert. denied*, 372 U.S. 943 (1963). In this case, no economic hardship forced ANSI to reduce the number of laborers employed in the business in which it was engaged. The plaintiffs were not a part of a reduction in workforce but rather a wholesale transfer of ANSI's workforce to Cargill.

### C.  "Etc."

ANSI's use of the term "etc." at the end of the list of possible causes for permanent separation does not create ambiguity in the severance policy. As the district court noted, "etc." refers to "others of a like kind." Black's Law Dictionary 553 (6th ed. 1990). The phrases preceding the term in this context are so unlike plaintiffs' situations that the

reading of this particular plan's definition of "release" supports plaintiffs' claims for severance benefits. We agree.

## A.  Lack of Work

The plain meaning of "lack of work" does not encompass plaintiffs' situation. The plaintiffs are presently doing the same or substantially similar work as they did for ANSI before the asset sale. The transfer of employment from ANSI to Cargill was not caused by a lack of work at ANSI, but rather by the sale of all of ANSI's assets to Cargill. This common sense reading is consistent with the common sense we and sister circuits have applied in other cases. *See Garavuso v. Shoe Corps. of Am. Indus., Inc.*, 709 F. Supp. 1423 (S.D. Ohio) (holding that employees who continued at a comparable job with a successor company had not been "permanently terminated or laid off by the Company due to lack of work"), *aff'd*, 892 F.2d 79 (6th Cir. 1989); *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272 (10th Cir. 1994) (holding that employees of successor corporation were not laid off for "lack of work" after transfer of ownership); *Bradwell v. GAF Corp.*, 954 F.2d 798, 800 (2d Cir. 1992) (same); *Lakey v. Remington Arms Co.*, 874 F.2d 541, 545 (8th Cir. 1989) (holding that a change in employer from one federal contractor to another caused employees no "lack of work").

Plaintiffs point out that according to the specific language of the ANSI plan, "lack of work" may be due to "reorganization . . ., etc.," and that this asset sale could be considered analogous to a reorganization. It is true that the plain terms of the plan indicate that a "lack of work" *may* arise from corporate reorganization or something analogous, as perhaps is the case for those ANSI employees who were not offered employment with Cargill. However, there is no lack of work as to these plaintiffs under any common sense understanding of the phrase.

on-going demand on employer assets. A plan may be an ERISA plan if the employer "assumes . . . responsibility to pay benefits on a regular basis, and thus faces . . . periodic demands on its assets that create a need for financial coordination and control." *Fort Halifax*, 482 U.S. at 12. In *Shahid v. Ford Motor Co.*, 76 F.3d 1404 (6th Cir. 1996), for example, we held that Ford's severance pay plan, which included continuation of medical benefits, professional re-employment assistance, and retirement "grow-in" provisions, was an ERISA plan. *Id.* at 1410. By contrast, in *Sherrod*, we noted that one-time lump sum distribution of severance benefits is not consistent with ERISA's definition of a welfare benefit plan. 33 F.3d at 639.

The ANSI severance plan reveals a degree of discretion, periodic demands on assets, and an administrative burden that ERISA's definition contemplates.[2] The original severance

---

[2]The core provisions of ANSI's termination and severance pay policy were articulated in a 1991 document entitled "Corporate Termination Policy for Salaried Employees." (J.A. at 41-45). This document defines "release" – the core of the dispute in this case – and provides benefits based on the duration of the employee's tenure with the company. In a memo dated February 18, 1997, in anticipation of the deal with Cargill, ANSI elaborated on its termination policy "for clarification purposes." ( J.A. at 68-70). This 1997 memo listed significantly higher benefits for most employees as well as a more complicated plan for the extension of employee benefits, and the provision of career transition services. Contrary to plaintiffs' assertion, the benefits listed in this memo applied to any employee eligible for benefits under the 1991 policy, and was not limited to only those ANSI employees not offered employment by Cargill. The district court assumed that ANSI's severance policy comprised both documents; plaintiffs contend on appeal that only the 1991 document applies to them.

Construing the facts in a light most favorable to the plaintiffs, the 1997 memo is not distinct from ANSI's general severance pay plan. Plaintiffs do not allege, and the facts do not indicate, that ANSI adopted enhanced benefits as a strategic maneuver to ensure a stronger position on the ERISA question in anticipation of this litigation. ANSI simply wished to "sweeten the deal," as plaintiffs put it, for employees eligible for severance benefits after the Cargill deal. Plaintiffs cite no law that would prohibit ANSI from clarifying their severance benefits policy in this manner.

policy generally provided for lump sum payment based on the employee's tenure with ANSI, "unless an alternate arrangement is approved by the company." (J.A. at 43). As amended in 1997, some employees were permitted to choose between lump sum payment and a two-year salary continuation period. (J.A. at 132). If alternate arrangements for installment payments were approved, continuation of benefits had to be negotiated at the discretion of ANSI. (J.A. at 44). Although benefits were generally formulaic, the company president had discretion to approve a larger amount in some cases. *Id*. Employees with five or more years of service could choose between normal severance payment and a series of monthly payments that began at retirement age. (J.A. at 45).[3] The employee had to submit a written application in order to receive this retirement benefit, although it is not clear whether ANSI retained discretion to deny any application. *Id*. Released employees were also permitted to extend their medical, dental and life insurance benefits, and were entitled to career transition services. (J.A. at 44, 132). On the whole, this severance benefits scheme displays a degree of administrative complexity that more closely resembles plans which we have included in ERISA's scope.[4]

---

[3]Plaintiffs claim that because this provision is contained in a "retirement plan" sub-heading, it is not part of the severance plan at issue in this case. However, the provision is part of the ANSI corporate document "Corporate Termination Policy for Salaried Employees," which as a whole governs termination and severance benefits.

[4]Plaintiffs also argue that ANSI did not make required ERISA filings or satisfy ERISA disclosure requirements, and therefore they did not treat the severance plan as an ERISA plan. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 402-03 (6th Cir. 1998) (detailing ERISA's procedural requirements). Plaintiffs cite no case law supporting the proposition than an employer's subjective understanding of the status of its termination benefits plan is a relevant criteria in determining whether it qualifies as an ERISA plan. Moreover, plaintiffs provide no evidence in the record to support their assertion that ANSI did not comply with ERISA's procedural requirements.

In light of these facts, we hold that ANSI's severance plan is an ERISA plan, and that the district court did not err in applying federal common law precedents to interpret the contractual language.[5]

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue of material fact for trial, and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The question of whether this ERISA-governed severance benefit plan's contractual language is ambiguous is a question of law requiring *de novo* review. *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994).

As the district court noted, the sole question in this case is whether plaintiffs' transfer of employment from ANSI to Cargill was a "release" as defined by the ANSI severance plan. In order to qualify as a "release" in this context, plaintiffs must have been permanently separated due to "lack of work," an "economic reduction in the workforce," or some other reason covered by the plan's use of the term "etc."

Courts should interpret ERISA plan provisions "according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). In applying this "plain meaning analysis," the court "must give effect to the unambiguous terms of an ERISA plan." *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996). The district court found that no plausible

---

[5]Although plaintiffs' cause of action was originally filed as a state law contracts claim, we may construe it as a claim for benefits under ERISA § 502(a)(1)(B) without materially altering the nature of the issues before us, in order to avoid any preemption issues. That section provides that "a civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).