George J. EVANOFF, Jr., Plaintiff,

v.

BANNER MATTRESS COMPANY, INC., et al., Defendants.

No. 3:07CV01754.

United States District Court, N.D. Ohio, Western Division.

Nov. 16, 2007.

James R. Knepp, II, Mark C. Abramson, Stephen J. Stanford, Robison, Curphey & O'Connell, Toledo, OH, for Plaintiff.

Kathleen W. Kolodgy, Sarah A. McHugh, William T. Maloney, Maloney, McHugh & Kolodgy, Ltd., Erik G. Chappell, Lyden, Liebenthal & Chappell, Toledo, OH, for Defendants.

## ORDER

JAMES G. CARR, Chief Judge.

This case involves a contract dispute over pension benefits. Plaintiff George Evanoff seeks damages under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. (ERISA) and various state law claims as a result of Defendant Banner Mattress Company's [BMC] allegedly wrongful termination of him and interference with his benefits. Pending are defendants' motions to: 1) dismiss for lack of subject matter jurisdiction, failure to state a claim, and on abstention grounds; 2) pre-empt Evanoff's state law claims; and 3) dismiss Evanoff's request for extra-contractual and punitive damages.

BMC is an Ohio-based company that manufactures and sells home furniture. Defendants Steven Karp, David Karp, and Matthew Karp are joint and controlling shareholders of BMC. Defendant ADSM Properties, Ltd., is a limited liability corporation whose principal place of business is in Lucas County, Ohio. Defendant John Doe is trustee for the trust of Barbara Karp—former controlling shareholder and owner of BMC.

For the reasons discussed below, defendants' motions to dismiss for lack of subject matter jurisdiction, failure to state a claim and on abstention grounds are denied. Defendants' motions for preemption of Evanoff' s state law claims and dismissal of Evanoff's request for extra-contractual damages are partially granted and partially denied.

### Background

BMC initially hired Evanoff in September, 1979. In 1985, BMC promoted Eva-

noff to an executive position in the company.

At the time, Evanoff entered into an oral Employment Agreement [Agreement] which provided him with deferred and severance compensation benefits. The Agreement was formalized in writing in 2003. By its terms, the Agreement was set to terminate on December 31, 2012.

As stated therein, Article VI of the Agreement "intend[s] to provide a deferred compensation benefit to the Executive." [Doc. 27–2] The plan provides that within ninety days following the Executive's termination of employment with the Company, for any reason, the Company shall deliver to the Executive an amount equal to ten percent of the vested balance of the Account plus a promissory note for the remaining ninety percent. The remaining amount would be paid in nine annual installments, each due on the same day of the year as the initial payment. During the payment period, interest would be computed at the Applicable Federal Rate and distributed with the annual payments. The Executive would forfeit all deferred compensation benefits if he breached the Agreement's non-compete and confidentiality provisions.

The Agreement also provides that if the employee is involuntarily terminated without cause "the company shall continue to pay the Executive, as severance compensation, his salary for eighteen months from the date of notice to the Executive." [Doc. 27–2] In addition, the company agreed to continue during that period to provide "such health, life and long-term disability insurance coverage which were being provided to him on the date [of] notice." [Doc. 27–2]

After Myron Karp died in 2004, Steven Karp, David Karp, and Matthew Karp purchased the company from Barbara Karp, who had inherited control.

On July 16, 2006, Steven Karp mailed Evanoff a letter providing formal notice that Evanoff's employment would be terminated on December 31, 2007. Subsequently, one or more members of BMC indicated to Evanoff that any payments made to him between then and his termination would be severance compensation under the Agreement. On October 23, 2006, Steven Karp memorialized these representations in a letter to Evanoff.

Evanoff subsequently filed suit in state court, seeking full payment of the benefits promised under the original Agreement, compensatory damages resulting from the "mental anguish and costs associated with securing new employment" and related punitive damages. [Doc. 27]

Steven Karp informed Evanoff that he would be placed on administrative leave of absence effective December 29, 2006, and would not be required to report to work after December 22, 2006. Evanoff did not report to work after December 22nd. Evanoff received severance pay until March 15, 2007, when it was terminated. Evanoff's health, life, and disability insurance coverage was terminated on April 1, 2007. The company provided no explanation or notice with regard to either of those actions.

Shortly thereafter, Evanoff filed the current suit in federal court and voluntarily dismissed his initial state court action.

Evanoff, in his complaint, alleges three ERISA violations: 1) denial of benefits due according to an ERISA-covered severance plan in violation of 29 U.S.C. § 1132(a)(1)(B); 2) denial of benefits due under an ERISA-covered deferred compensation plan in violation of 29 U.S.C. § 1132(a)(1)(B); and 3) BMC's unlawful retaliation in response to Evanoff's attempt to collect employment benefits under 29 U.S.C. § 1140. In addition, Evanoff also alleges state law claims for: 1) breach of contract; 2) age discrimination

under O.R.C. § 4112.02; and 3) fraudulent conveyances.

## Discussion

### 1. Subject Matter Jurisdiction

BMC and the Karps initially allege that this court lacks subject-matter jurisdiction over this case.

Evanoff must only prove that this court has subject matter jurisdiction over one of his claims. As all claims arise out of the same set of operative facts, the court may consider the remaining counts via its supplemental jurisdictional authority. 28 U.S.C. § 1367; *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

The court's jurisdiction in this case depends on whether the plans at issue are "ERISA plans." *Swinney v. General Motors,* 46 F.3d 512, 517 (6th Cir.1995) (requiring that ERISA cover the benefit plan for the court to have jurisdiction); *Langley v. DaimlerChrysler Corp.,* 502 F.3d 475, 481–82 (6th Cir.2007) (Unpublished disposition) (noting that the majority of federal courts require an ERISA plan for federal subject matter jurisdiction over an ERISA claim). If ERISA covers the plans, defendant properly filed this action in this court. If not, this case involves only state law claims over which this court does not have jurisdiction. *Warren v. Snap–On,* 2005 WL 1828889, *5 (W.D.Ky.).

ERISA defines an "employee welfare benefit plan" as any plan, fund, or program established or maintained by an employer for the purpose of providing for its participants: 1) benefits in the event of unemployment; or 2) "any benefit described in section 186(c) of this title." 29 U.S.C. § 1002(1).

■ It is not enough, however, for a plan to fall within the definition provided by ERISA. "The court must look beyond the language of the statute to the precedents of the Supreme Court, the Sixth Circuit Court of Appeals, and to other persuasive authority from other courts to determine whether plaintiff's severance package is an ERISA plan." *Rodgers v. Q3 Stamped Metal, Inc.,* 499 F.Supp.2d 984, 990 (S.D.Ohio 2007).

As discussed in the following sections, courts in the Sixth Circuit have used two separate tests when analyzing whether ERISA covers severance and non-severance employee benefits plans.

### A. The Severance Plan

■ The Supreme Court has said that plans to pay employees severance benefits, that are payable only after termination of employment, are employment welfare benefit plans covered by ERISA. *Massachusetts v. Morash,* 490 U.S. 107, 116, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). The Sixth Circuit, however, has held that "not all severance pay plans are ERISA plans." *Cassidy v. Akzo Nobel Salt,* 308 F.3d 613, 616 (6th Cir.2002).

The pivotal question is whether the Plan creates an "on-going administrative scheme." *Sherrod v. General Motors Corp.,* 33 F.3d 636 (6th Cir.1994); *see also Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11–12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (finding ERISA inapplicable where a "one-time lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation").

In determining whether a plan is sufficient for ERISA coverage, this circuit has stated:

"simple or mechanical determinations do not necessarily require the establishment of an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria."

*Id.* (quoting *Kulinski v. Medtronic Bio–Medicus, Inc.*, 21 F.3d 254, 257–58 (8th Cir.1994)).

■ An administrative scheme may also arise when the employer "assumes ... responsibility to pay benefits on a regular basis, and thus faces ... periodic demands on its assets that create a need for financial coordination and control." *Swinney, supra*, 46 F.3d at 517 (quoting *Fort Halifax Packing, supra*, 482 U.S. at 12, 107 S.Ct. 2211).

Accordingly, where an ERISA plan is at issue, a fact specific application of non-determinative factors, must be conducted. *Warren, supra*, 2005 WL 1828889, *3. In *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1410 (6th Cir.1996), the Sixth Circuit held that ERISA covered Ford's severance pay plan because it included: "1) substantial severance payments; 2) professional reemployment assistance; 3) continuation of medical and life insurance coverages for up to one year; and 4) retirement 'grow-in' provisions." In contrast, in *Sherrod, supra*, 33 F.3d at 639, this Circuit held that a one-time lump-sum payment of severance benefits was not an ERISA plan.

■ The severance plan at issue here is not extensive and complex enough to require an on-going administrative scheme and thus, is not covered by ERISA. The Agreement here only requires that Evanoff continue to receive his salary and regular insurance benefits for 18 months following his termination. Although, the periodic distribution of checks requires more than a mere one-time payment, it requires nothing more than the simple mathematical computation emblematic of non-ERISA plans. *See Delaye v. Agripac, Inc.*, 39 F.3d 235 (9th Cir.1994) (holding that an employment contract requiring the continuation of pay and benefits was not an ERISA plan because sending an employee a single check a month did not constitute an administrative scheme).

■ Similarly, the mere continuation of life and health insurance benefits by themselves is not enough to bring a severance plan within the purview of ERISA coverage. As the life and health insurance benefits are mere continuations, the coverage requires no additional, unique administrative scheme other than what was already in place. *Nelson v. General Motors Corp.*, 1998 WL 415993, *1 (6th Cir.1998) (Unpublished disposition) (finding no on-going administrative scheme where previous benefits were merely continued).

Unlike *Shahid*, furthermore, the severance plan does not include professional reemployment assistance or retirement "grow-in" provisions that by their "nature, involve ongoing, employee specific processing and handling." *Id.* (emphasizing the lack of grow-in provisions in finding that no ERISA plan existed).

## B. The Deferred Compensation Plan

■ The court must conduct a three-step factual inquiry to determine whether a non-severance employee benefit plan is covered by ERISA.[1] *Thompson v. Ameri-*

---

1. Deferred compensation plans are generally analyzed under the traditional *Thompson–Dillingham* three factor test discussed below. *E.g. Hughes v. White*, 467 F.Supp.2d 791, 801 (6th Cir.2006) (focusing on the second *Thompson* prong when assessing whether a deferred compensation scheme is covered by ERISA). In *Wayne v. Detroit Medical Center Non–Qualified Deferred Compensation Plan*, 2007 WL 624124, *6 (E.D.Mich.2007), howev-

er, the court evaluated the plaintiff's deferred compensation plan as a severance agreement. The court reasoned that even though the plan was titled "deferred compensation" it in effect was a severance plan because the "benefit was conditioned on [the employee's] fulfillment of the 1996 employment agreement" that required him to remain employed with the company for an additional seven years. *Id.* In this case, no additional employment

*can Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir.1996). First, the court must determine whether the program is exempt from ERISA coverage by the Department of Labor's "safe harbor" regulations. *Fugarino v. Hartford Life and Accident Ins. Co.*, 969 F.2d 178, 183 (6th Cir.1992). Second, the court must ask whether based on "the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits" covered by the plan. *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir.1991). Finally, the court must examine "whether the employer 'established or maintained' the plan [intending to provide] benefits to its employees." *Thompson, supra,* 95 F.3d at 435.

█ The Department of Labor's "safe harbor" provisions exclude from ERISA coverage: 1) compensation at a rate in excess of a normal rate; 2) payment of an employee's compensation for periods during which he is physically unable to work; 3) payment of an employee's compensation for periods he does not work, but is physically able; 4) payment of compensation during an employee's training; and 5) payment of compensation to an employee who is relieved while on sabbatical. 29 C.F.R. § 2510.3–1(b).

As BMC's deferred compensation plan does not fit into any of the aforementioned categories, it survives the first prong.

Likewise, based on the surrounding circumstances, a reasonable person could ascertain that the deferred compensation plan existed. The Agreement clearly states that monetary disbursements of deferred compensation will be the benefit provided and sets out a specific method of calculating such amount. *See Hughes, supra,* 467 F.Supp.2d at 802 (finding no plan where benefit was unspecified amount of salary). The Agreement explicitly identifies Evanoff as the individual to whom it applies.[2] *See Kolkowski v. Goodrich,* 448 F.3d 843, 850 (6th Cir.2006) (concluding that "employees who are involuntarily terminated" comprise a specific enough group for ERISA purposes). The Agreement directs that a "top-hat" fund shall be created from which the benefits will be distributed.[3] *See Williams v. WCI Steel Co.,* 170 F.3d 598, 603 (6th Cir.1999) (finding that the existence of a trust was sufficient enough a source for ERISA purposes). In addition, the Agreement dictates that the balance of the account be paid out in nine annual installments. *See id.* at 604–05 (concluding that no ERISA plan existed because the employer had yet to create an administrative scheme by which to distribute the trust).

Finally, it is also clear that BMC established and maintained the plan intending to provide a benefit to Evanoff. As discussed, the plan states that it will be created to provide deferred compensation to Evanoff after completion of his employment. Neither BMC or the Karps have

---

requirement was attached to Evanoff's deferred compensation plan. Thus, I will use the *Thompson–Dillingham* test.

**2.** The Agreement is not excluded from coverage as an ERISA plan because it only applies to one person. *B–T Dissolution, Inc. v. Provident Life and Acc. Ins. Co.,* 101 F.Supp.2d 930, 940 n. 16 (S.D.Ohio 2000).

**3.** A top-hat plan is defined as "a plan which is unfunded and is maintained by an employer

primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2).

Top-hat plans, while not covered by ERISA's substantive provisions, are subject to ERISA's enforcement provisions. *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 468 n. 10 (6th Cir. 2002).

presented any evidence that they demonstrated to Evanoff or took any action to the contrary. *See Olejniczak v. Industrial Machine & Die Co.*, 1999 WL 506976, *1 (6th Cir.1999) (Unpublished disposition) (finding that a plan had not been established where the employer refused to comply with the plan's requirements and then informed the employees of such).

As the deferred compensation plan is an ERISA plan, this court has jurisdiction over Evanoff's first claim—alleging a denial of benefits due under an ERISA-covered deferred compensation plan—and third claim—alleging illegal retaliation in response to Evanoff's attempt to collect the amount owed him under the deferred compensation plan and can exercise supplemental jurisdiction over Evanoff's remaining claims.[4]

### 2. Preemption

The Karps, in the alternative, also argue that federal ERISA jurisprudence preempts Evanoff's claims. Whether federal law preempts state law also depends on whether the claim involves an ERISA plan. *E.g., Thompson, supra,* 95 F.3d at 434.

As I have determined, Evanoff's first and third claims involve breaches of ERISA plans. Accordingly, federal ERISA jurisprudence governs Evanoff's first and third causes of action, while state law continues to govern Evanoff's other claims.

### 3. Failure to State a Claim

■ BMC, in the alternative, argues that Evanoff's § 1140 retaliation claim should be dismissed for failure to state a claim.

A case will be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only if it appears that the non-movant can prove no set of facts in support of his claim that would entitle him to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). While the court construes the complaint in the light most favorable to the plaintiff, and accepts all factual allegations as true, a court is not required to accept as true unwarranted legal conclusions and/or factual allegations. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987).

Section 1140 provides: "It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ..."

■ When applying this statute, the Sixth Circuit has employed a burden-shifting approach if there is no direct evidence of the employer's motivation. *Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043–44 (6th Cir.1992). Thus, to avoid summary judgment, a plaintiff must show a genuine issue of material fact as to whether there

---

4. BMC also argues that Evanoff's claims should be dismissed on abstention grounds because this court's jurisdiction over the ERISA claims is concurrent with the state courts. BMC later admits, however, that federal courts exercise exclusive jurisdiction over ERISA-based retaliation claims. Judicial economy, furthermore, favors that in cases such as these, where the basic factual question underlying federal and state claims— whether BMC was justified in terminating Evanoff without benefits—is the same, judicial economy favors that supplemental juris-

diction be granted. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir.1993) ("A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."). Therefore, I reject BMC's abstention arguments.

For similar reasons, I reject the Karps' argument that this case be remanded to state court because BMC's counterclaims remain pending there.

was: " '1) prohibited employer conduct; 2) taken for the purpose of interfering; 3) with the attainment of any right to which the employee may become entitled.' " *Id.* (citing *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3rd Cir.1987)).

The Sixth Circuit has held that a plaintiff, to prove that he was discharged in violation of § 1140, "must show that an employer had a specific intent to violate ERISA." *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir.1991). The plaintiff does not have to prove "that the employer's sole purpose in discharging him was to interfere with his pension benefits, but rather that it was 'a motivating factor' in the decision." *Humphreys, supra*, 966 F.2d at 1043.

If the plaintiff proves a prima facie case, the employer must then "introduce admissible evidence of a legitimate, nondiscriminatory reason for its challenged action." *Id.* (quoting *Gavalik, supra*, 812 F.2d at 853). If the employer cannot, the court should rule for the plaintiff. *Humphreys, supra*, 966 F.2d at 1043. If the employer asserts a legitimate motivation for its actions, then the presumption of wrongfulness is eliminated, and "the plaintiff must either prove that the interference with pension benefits was a motivating factor in the employer's actions or prove that the employer's proffered reason is unworthy of credence." *Id.*

Based on the facts alleged by Evanoff, he has demonstrated a prima facie case of illegal retaliation. BMC, at the end of its reply brief, merely asserts that Evanoff cannot make out a prima facie case of illegal retaliation. In support, it provides two arguments. First, BMC argues that Evanoff was not exercising a right due under an ERISA plan. I have already rejected this argument above. Second, BMC argues that Evanoff has not proven that it was specifically motivated by Evanoff's court filings. As noted above, this is

more than the law requires. Evanoff filed suit in Ohio state court seeking payment under the ERISA-qualifying, deferred compensation plan. Subsequently, BMC terminated Evanoff's severance pay and life/health insurance benefits. As BMC has not alleged any alternative motive, I am left to assume that Evanoff's filings in Ohio state court motivated BMC.

### 4. Extra–Contractual Compensatory and Punitive Damages

Finally, BMC also argues that Evanoff's requests for extra-contractual and punitive damages should be dismissed. BMC's assertions, in regards to Evanoff's two ERISA claims, are well taken.

### A. Evanoff's § 1140 Claim

The law is well settled that recovery for ERISA claims brought under § 1 132(a)(3) does not include compensatory or punitive damages. *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)(holding that the phrase "other appropriate equitable relief" in § 1132(a)(3) is limited to forms of relief typically available in equity). As the Sixth Circuit has held, § 1140 claims are brought under 1132(a)(3). *Leemis v. Medical Servs. Research Group, Inc.*, 75 Fed. Appx. 986, 988, 2003 WL 22220527, *2 (6th Cir.2003) (Unpublished disposition). Thus, punitive and extra contractual damages under Evanoff's § 1140 claim are unavailable.

### B. Evanoff's § 1132(a)(1)(B) Claim

The Sixth Circuit has also held that extra-contractual compensatory and punitive damages are not available under § 1132(a)(1)(B). *International Union UAW Local 91 v. Park–Ohio Industries, Inc.*, 1989 WL 63871, *8 (6th Cir.1989) (Unpublished disposition); *see also Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (noting that § 1132(a)(1)(B) "says

nothing about the recovery of extra-contractual damages … and thus, there is really nothing at all in the statutory text to support the conclusion that such [violation] gives rise to a private right of action for compensatory or punitive relief"). Accordingly, Evanoff's request for extra-contractual damages under § 1132(a)(1)(B) for breach of the deferred compensation Agreement is also denied.

As to Evanoff's remaining claims, not governed by ERISA, extra contractual and punitive damages remain available.

## Conclusion

For the foregoing reasons, it is hereby ORDERED THAT:

1. Defendants' motion to dismiss for lack of subject matter jurisdiction shall be, and the same hereby is denied;

2. Defendants' motion to dismiss for failure to state a claim shall be, and the same hereby is denied;

3. Defendants' motion to dismiss on abstention grounds shall be, and the same hereby is denied;

4. Defendants' motion for preemption of plaintiff's state law claims shall be, and the same hereby is partially granted and partially denied;

5. Defendants' motion to dismiss plaintiff's request for extra-contractual compensatory and punitive damages shall be, and the same hereby is partially granted and partially denied.

6. A scheduling conference is set for December 10, 2007 at 10:30 a.m.

So ordered.