**Brent REEDSTROM, Plaintiff–Appellant,**

v.

**NOVA CHEMICALS, INC., Defendant–Appellee.**

No. 02–4143.

United States Court of Appeals, Sixth Circuit.

April 23, 2004.

Donald F. Brezine, Daniel L. Swigert, Brezine Law Offices, Fairborn, OH, for Plaintiff–Appellant.

Linda Hauserman Harrold, Lester W. Armstrong, Belkin, Billick, & Harrold, Cleveland, OH, for Defendant–Appellee.

Before MOORE, SUTTON and FRIEDMAN,* Circuit Judges.

SUTTON, Circuit Judge.

Brent Reedstrom sued his former employer, Nova Chemicals, for breach of contract in the Ohio Court of Common Pleas. He alleged that Nova had denied him severance benefits when the company "substantially changed ... and or eliminated" his position. Nova removed the action to federal court, claiming preemption of the state-court lawsuit under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Reedstrom moved to remand the case, alleging that the denied benefits did not qualify as an ERISA "employee benefit plan," while Nova filed a motion for summary judgment. The district court re-fused to remand the case and dismissed the action on the merits. Reedstrom appeals both of these actions, and we affirm.

## I.

Brent Reedstrom worked for Nova from March 1987 until October 4, 1996. Most recently. Reedstrom served the company as a "Technical Service Team Leader," a part of the "Styrenics Technology Group."

In late 1995, the company began a major restructuring in order to remain competitive in its industry. The initial restructuring centered on the consolidation of leadership positions within Reedstrom's group. The second phase of the restructuring involved the complete closure of the facility where Reedstrom worked (the Leominster facility) and a relocation of the business operations from that facility.

As a result of the initial "consolidation," Reedstrom and another employee lost their leadership responsibilities. On April 15, 1996, Keith McLeod, the Technology Group Leader, announced job reassignments within Reedstrom's group and indicated that his new assignment was "Special Projects," JA 194–95–projects that Reedstrom complains never materialized, effectively leaving him with no substantial job responsibilities. At this point, however, the company did not fire any employees; it did not reduce Reedstrom's or anyone else's pay; and it did not formally notify employees that firings were forthcoming.

On May 29, 1996, the company distributed a memo to its employees addressing the restructuring. The memo stated that the "changes will significantly impact the organization and our employees. Over the next year, people will move to new locations, some positions will change, and some

* Daniel M. Friedman, Circuit Judge for the        Federal Circuit, sitting by designation.

jobs will be lost." JA 208. In a document entitled "Questions and Answers for Employees," which was distributed along with the memorandum, the company noted that although some employees would lose their jobs in the restructuring, no terminations would occur before December 31, 1996. JA 210. At a meeting held in connection with the distribution of the memorandum, at a slide show presentation, and in one-on-one meetings held with employees (including Reedstrom, JA 203, 213–14), Nova told employees that they were required to stay with the company through December 31, 1996 in order to be eligible for severance pay and benefits under a company-sponsored program called "Employment Transition and Continuity" (ET & C). JA 94.

The ET&C program offered employees various career options such as early retirement, leaves of absence and part-time work schedules to facilitate voluntary workforce reduction and to reduce the need for layoffs. ET&C Guidelines ("Guidelines") 10, JA 103 ("ET&C is designed to accomplish necessary workforce reductions by offering people an opportunity to make choices about their future and supporting their choices with meaningful career transition programs."). An employee was entitled to participate in the program (and request one of the scaled-back work alternatives or voluntary termination) if he or she was "a regular, non-union NOVA employee in US, and offshore locations (full-time or part-time) and [ ] belong[ed] to a business unit targeted for reductions." Guidelines 8, JA 106. Under the program, Nova reserved discretion to determine which business units are "targeted for reductions," as well as the right to impose other limitations or modify the terms of the plan at any time. Guidelines 1, JA 99. The ET&C Guidelines also stated that if an "eligible employee" left Nova "as a result of targeted reductions," the

employee would be entitled to a severance package "under the terms of the Novacor Severance Plan." Guidelines 10. JA 108; *see also* Guidelines 6, JA 105.

On September 18, 1996, Reedstrom resigned from Nova, telling his superiors at the company that he planned "to pursue other opportunities under my [eligibility] for ET&C . . . which resulted in the elimination of my leadership position." JA 225. He followed this brief letter with a lengthy memorandum dated September 26, 1996 to Arnold Wensky, a human resources manager, explaining why he believed he was entitled to ET&C benefits. JA 178. These two communications represented the first time that Reedstrom had memorialized in writing his view that he was entitled to ET&§C benefits even if he left the company before December 31, 1996. Prior to these letters, he had communicated orally to Scott Loomer, a human resources employee, that he "assumed" he was eligible for ET&C benefits; Loomer told him that he would not qualify if he left the company before December 31st. JA 228.

On November 8, 1999, Reedstrom filed a contract claim against Nova in state court. His claim paralleled the arguments he made in the September 26th letter to Nova personnel: namely, that he became eligible for ET&C benefits (including severance pay) on April 15th when Nova revoked his leadership responsibilities, not on May 29th when Nova announced its Leominster plant closing. Because the "elimination" of his leadership position was "a separate event from the announcement to close Leominster," Reedstrom alleged, the condition announced at the May 29th meeting that employees would have to remain with Nova through December 31, 1996 to qualify for benefits did not apply to him. JA 179.

On December 8, 1999, Nova removed the case to United States District Court for the Southern District of Ohio on the ground that Reedstrom's claim was completely preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* In response, Reedstrom claimed that the ET & C program did not fall within ERISA's purview and that the action should be remanded to state court.

The district court determined that the case was properly removed to federal court, then granted Nova's motion for summary judgment. It first determined that the ET&C plan and severance package together constitute an "employee benefit plan" under ERISA and that the breach of contract action "relates to" this plan. As a result, the court concluded, federal ERISA law preempts the state-court suit and provides a basis for federal subject-matter jurisdiction. It then determined that Nova properly denied Reedstrom ET&C program benefits and severance because he left the company voluntarily before December 31, 1996 and accordingly did not satisfy one of the conditions of eligibility.

## II.

Whether ERISA preempts a state-law claim presents a legal question that we review de novo. *Nester v. Allegiance Healthcare Corp.*, 315 F.3d 610, 613 (6th Cir.2003). To the extent the existence of an ERISA plan presents a question of fact, we review that issue for clear error. *See Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir.1996) ("The existence of an ERISA plan is a question of fact.").

ERISA preempts state laws, including common law contract claims, to the extent they "relate to any employee benefit plan" as defined by the statute. 29 U.S.C. § 1144(a); *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (state common law actions are preempted by ERISA if they relate to employee benefit plans). While ERISA preemption, without more, does not convert a state lawsuit into a federal one, a lawsuit may be removed to federal court under 28 U.S.C. § 1441(b) if the state action also falls within the scope of 29 U.S.C. § 1132(a)—ERISA's civil enforcement provision—which allows a plan "participant" to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a); *see Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir.1995).

If Nova's ET&C plan amounts to an ERISA-qualifying "employee benefit plan," Reedstrom's action, styled as a breach of contract claim, plainly falls within § 1132's compass: For Reedstrom quite clearly claims that Nova failed to respect his rights under the ET&C plan. Compl., JA 15–16 ("Defendant used this sequence of events to deprive Plaintiff of his eligibility for ET&C [benefits].... Defendant has subsequently continued to deny Plaintiff the benefits of ET&C."). The pivotal question then with respect to whether this case should have been removed to federal court is whether the ET&C program represents an ERISA-covered plan.

ERISA says that an "employee benefit plan" may be an "employee welfare benefit plan" or an "employee pension plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is "any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants ... benefits in the event of ... unemployment" (among other

types of benefits) or "any benefit described in section 186(c) of this title [a provision of the Labor–Management Relations Act]." 29 U.S.C. § 1002(1). As § 186(c)(6) makes clear, severance policies may qualify as employee welfare benefit plans. 29 U.S.C. § 186(c)(6); *Shahid v. Ford Motor Co.,* 76 F.3d 1404. 1409–10 (6th Cir.1996); *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 947 (6th Cir.1990). Hence a plan having as its "major features" "(1) substantial severance payment; (2) professional re-employment assistance; (3) continuance of medical … and life insurance coverage …; and (4) retirement 'grow-in' provisions" is an employee welfare benefit plan under ERISA. *Shahid,* 76 F.3d at 1410; *see also Moloney v. Ford Motor Co.,* No. 94–3487, 1995 WL 745876, at \*6 & n. 2 (6th Cir. Oct. 25, 1995).

■ The ET&C plan shares these precise features. As the district court found, severance compensation is a component of the plan, the plan involves career transition assistance and the plan provides for the continuation of certain benefits during the period of transition.

The ET&C plan also has "an ongoing administrative program" to meet Nova's obligations, another necessary "hallmark of an ERISA benefit plan." *Swinney v. Gen. Motors Corp.,* 46 F.3d 512, 517 (6th Cir.1995) (quotation omitted). Under the plan, Nova must "analyze each employee's particular circumstances in light of the appropriate criteria" for eligibility set forth by the company. *Sherrod v. Gen. Motors Corp.,* 33 F.3d 636, 638 (6th Cir. 1994) (quoting *Kulinski v. Medtronic Bio-Medicus, Inc.,* 21 F.3d 254, 257 (8th Cir. 1994)). This requirement demands that Nova exercise discretion in deciding which business units, if any, are targeted for reductions, to determine which employees are eligible for the program. If employees are eligible, the program offers a host of options, including alternative work arrangements and voluntary termination, for which employees must apply. Employees submit written proposals to their business unit leaders, who must approve or deny the proposals, then (in the case of a denial) allow an opportunity of appeal. Guidelines 10, JA 108. This scheme is far more administratively attentive to the circumstances of each employee than the dispensation of a "one-time lump payment" to all employees, which would not qualify as an ERISA plan. *See Sherrod,* 33 F.3d at 639 (quoting *Wells v. Gen. Motors Corp.,* 881 F.2d 166, 176 (5th Cir.1989)); *see also Bogue v. Ampex Corp.,* 976 F.2d 1319, 1323 (9th Cir.1992) (contrasting plans requiring individualized decisionmaking for each employee with programs that involve blanket payout of severance for *all* employees; although the latter are not ERISA plans, the former are).

In challenging the district court's denial of his motion for a remand, Reedstrom offers two reasons why the ET&C program is not an ERISA plan. First, he attacks the district court's finding that severance pay was part and parcel of the ET&C plan, claiming that the district court inappropriately weighed the evidence rather than giving him the benefit of the doubt over disputed facts. Appellant's Br. at 27. While the district court considered the defendant's summary-judgment motion alongside Reedstrom's motion for a remand, the summary-judgment standard does not apply to the district court's determination whether it had jurisdiction over this dispute. *See RMI Titanium v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134–35 (6th Cir.1996) (explaining the difference between a court's consideration of a summary-judgment motion under Rule 56 of the Federal Rules of Civil Procedure and its consideration whether it has subject-matter jurisdiction under Rule 12(b)(1) of

the Federal Rules of Civil Procedure and noting that a district court may weigh the evidence and make factual findings under Rule 12(b)(1)).

Even if we treat Reedstrom's argument as a claim that the district court's factual finding on this issue amounted to clear error, that does not help his cause. Not only does Reedstrom fail to point to any evidence that calls the district court's finding into question, he does not explain his own admission that "severance is part of the ET&C program." Reedstrom Dep. 80, JA 248.

Second, Reedstrom argues that the ET&C program lacks the degree of certainty required to constitute a "plan" under ERISA because a reasonable person could not "ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits" under the program. *Am. Home Assurance,* 95 F.3d at 435 (quotation omitted); *see also Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982). That is not true. As the district court observed, the "Guidelines contain detailed information about the options under the Program . . . . [and] incorporate by reference the formula for calculating severance payments." D. Ct. Op. at 12–13, JA 33–34. The class of beneficiaries is also succinctly defined by the Guidelines: "You are eligible to participate in the process if you are a regular, non-union NOVA employee in US, and offshore locations (full-time or part-time) and you belong to a business unit targeted for reductions." Guidelines 8, JA 106. As for procedures, the Guidelines not only describe the benefits application process, but also provide sample proposal letters. And although the Guidelines do not specify the source of financing, it takes little speculation to realize that Nova has undertaken that responsibility because the

Guidelines never mention employee contributions.

Reedstrom persists that these definitions do not suffice because Nova retains discretion to "target[ ]" a business unit "for reductions" and may modify the terms of the plan at any time. This kind of reservation of discretion, however, does not preclude the existence of an ERISA "plan," and Reedstrom offers no case law to the contrary. Not only may companies retain discretion in implementing ERISA plans, but a deferential standard of review applies to plans that reserve discretion to the plan administrator. *See, e.g., Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 456–57 (6th Cir.2003); *Miller v. Metro. Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991).

### III.

Having determined that the district court correctly concluded that the ET&C program was an ERISA plan and that Reedstrom's motion to remand the case to state court should have been rejected, we turn to the second question presented: Did the district court err in concluding that Reedstrom's request for benefits under the ET&C program failed as a matter of law?

As an initial matter, there is some debate about whether the plan administrator's denial of benefits to Reedstrom should be reviewed de novo or should be reviewed under an "arbitrary and capricious" standard. *Compare Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (courts review the denial of benefits de novo unless the plan reserves discretion) *and Marks,* 342 F.3d at 456–57 (courts apply an arbitrary and capricious standard to discretionary plans), *with Sanford v. Harvard Indus., Inc.,* 262 F.3d 590, 597 (6th Cir.2001) (affirming district court's

application of a de novo standard to a discretionary plan where proper procedures were not followed) *and Thompson v. J.C. Penney Co.,* No. 00–3504, 2001 WL 1301751, at *4 (6th Cir. Aug. 7, 2001) (applying a de novo standard to a discretionary plan where the administrator gave no explanation for the denial of benefits). While the district court devoted a considerable amount of space in its opinion to this issue, we do not think it affects the outcome of this claim. Whether one gives considerable deference to the plan administrator's implementation of the ET&C program or none at all. Reedstrom did not qualify for benefits under the program.

As Nova's ET&C program made clear, the central factor in determining eligibility for benefits is whether an employee is "leaving as a result of targeted reductions" in his or her "business unit." Guidelines 10, JA 108. Nova permissibly retained "discretion" to "determine[ ] which business units are eligible" for benefits and to determine "any specific limitations or modifications to the ET&C program applicable to that business unit." Guidelines 8, JA 106. On May 29, 1996, when Nova announced its decision to close the Leominster plant, the company deemed all employees of that location "targeted for reductions" and announced the employees' eligibility for ET&C benefits—subject to one condition, which Nova had reserved the right to impose. The condition was that the employees remain with the company through December 31, 1996 in order to qualify for benefits. No one disputes that Nova imposed that condition or that the Guidelines gave the company the authority to impose it. In view of the discretion reserved by Nova, its decisions to impose this condition and to deem the employees "targets" of a workforce reduction on May 29th are not ones that Reedstrom (or the courts) may fairly second-guess. *Cf. Lockheed Corp. v. Spink,*

517 U.S. 882, 889–90, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (noting that an employer does not act as a fiduciary in altering the terms of a welfare benefit plan); *Adams,* 905 F.2d at 947 (same); *Ravenscraft v. Hy-Vee Employee Benefit Plan & Trust,* 85 F.3d 398, 401 (8th Cir.1996) (noting that because the employer "retained complete discretion to amend [its benefits] [p]lan [ ] [i]ts decision to amend the Plan to eliminate the benefits in question is not subject to judicial review for abuse of discretion").

Despite these clear requirements, Reedstrom tendered his resignation on September 18th and stayed with the company through October 4th, falling short of the December 31st date by almost three months. A straightforward application of the condition announced by Nova makes it clear that Reedstrom was not eligible for benefits.

Reedstrom counters that he became eligible for benefits before the May 29th meeting, and he was therefore not subject to the December 31st condition. In his view, he became eligible for benefits on April 15, 1996, when Nova removed his leadership responsibilities. To support this position, he points to a sentence of the Guidelines stating that "ET&C is designed to assist employees whose jobs are lost or *altered* as a result of restructuring." Guidelines 7, JA 105 (emphasis added). But the overwhelming emphasis of the Guidelines is on providing benefits for employees whose jobs would be eliminated (if not for the alternative work arrangements ET&C provides) or are being eliminated entirely. More importantly, this reference to "jobs … altered" does not change the critical fact that *Nova* must determine that an employee's business unit is targeted for reductions in order to trigger the plan for that employee. Under the plan, employees do not become eligible for benefits

because they perceive their work responsibilities as being "altered" or because they conclude that their positions are "targeted for reduction."

Reedstrom also disputes the district court's finding that the restructuring at Nova occurred in two phases—the first being when the company consolidated leadership responsibilities within the Technology Group, and the second when Nova decided to close the plant altogether. As an initial matter, the record amply supports the district court's finding on this matter. Nor at any rate has Reedstrom explained why an error in this finding would call into question the district court's ultimate determination.

Finally, Reedstrom challenges the district court's designation of the "administrative record" for purposes of its review. *See Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 616 (6th Cir.1998) (a district court may not stray beyond the administrative record whether review is de novo or arbitrary and capricious). But this argument, too, is unavailing because the clear language of the plan and the undisputed factual context of the case are all that is needed to understand why Nova denied benefits in this instance.

## V.

For the foregoing reasons, we affirm (1) the district court's denial of Reedstrom's motion to remand and (2) the district court's decision to grant summary judgment to Nova.